## STATE OF CONNECTICUT *v.* ANGEL OCASIO
### (AC 16474)

Spear, Hennessy and Shea, Js.

Argued March 17—officially released October 13, 1998

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Angel Ocasio, appeals from the judgment of conviction of conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 and 21a-277 (a) and violating the Corrupt Organizations and Racketeering Activity Act in violation of General Statutes § 53-395 (c). The defendant claims that the trial court improperly (1) accepted his guilty plea without ensuring that it was not the result of force or threats or promises apart from the plea agreement and (2) denied his motion to withdraw his guilty plea. We reverse the judgment of the trial court.

The following facts are relevant to the resolution of this appeal. On April 12, 1995, the state filed a five count information to which the defendant pleaded not guilty. On May 22, 1996, the day that jury selection began, the state filed a fifteen count substitute information. On May 23, 1996, pursuant to a plea agreement, the state

filed a substitute information charging the defendant with one count of conspiracy to sell narcotics in violation of §§ 21a-277 (a) and 53a-48, and one count of violating the Corrupt Organizations and Racketeering Activity Act in violation of § 53-395 (c), to which the defendant entered a plea of guilty.

The trial court canvassed the defendant, pursuant to Practice Book §§ 711 through 722, now §§ 39-19 through 39-28, and asked, "Is this plea voluntary?" to which the defendant stated, "Yes." Further, the trial court informed the defendant of the impact of pleading guilty[1] on his constitutional rights and then asked, "Is that what you want, sir?" to which the defendant responded, "Yes."

The trial court accepted the defendant's plea of guilty and found that it was "entered knowingly, intelligently and voluntarily, with a full understanding of the offenses charged, as well as the possible consequences thereof, and after adequate and effective assistance of counsel."

On August 23, 1996, just prior to sentencing, the defendant made a second[2] oral motion to withdraw his

---

[1] The relevant portion of the colloquy was as follows:

"The Court: And, again, have you had any difficulties in understanding the questions that I've asked you or in your giving the answers to those questions?

"The Defendant: No, Your Honor, everything is okay.

"The Court: And do you fully understand, Mr. Ocasio, that if I accept these guilty pleas . . . that you will not be permitted to withdraw these pleas, you'll be sentenced accordingly, and you will have given up those constitutional rights that I have already discussed with you?

"The Defendant: Yes."

[2] On July 19, 1996, just prior to sentencing, the defendant's attorney informed the court that the defendant wanted to withdraw his guilty plea. The court refused to hear this motion until the court could obtain a copy of the transcript from the plea proceeding. The court encouraged the defendant's attorney to file a written motion to withdraw the plea. This was not done. Also on July 19, 1996, the defendant's attorney orally moved to withdraw his appearance. That motion was denied by the court. Subsequently,

guilty plea. The defendant's attorney advised the trial court that the basis for the request to withdraw the plea was that the defendant "was confused; he didn't realize the consequences, apparently, of the plea at the time it was entered . . . [and] he feels that the pressure was a little too great. He feels that . . . there were other matters that were also impinging his reasons for making a knowing decision at the time." The trial court denied this motion, finding that the court "has heard nothing . . . to even permit an evidentiary hearing, much less grant an oral motion."

The defendant claims that the trial court improperly accepted his guilty plea because it failed to ensure that his guilty plea was voluntary, as required by Practice Book § 39-20, formerly § 712.[3] Specifically, the defendant claims that because the trial court failed to ensure that he was not "in any way threatened, coerced or pressured into pleading guilty," the trial court did not strictly comply[4] with § 712. The defendant argues that § 712 requires that the trial court ensure the following prior to accepting a guilty plea: First, that the plea is entered voluntarily and second, that the plea is not the result of force or threats or promises other than those associated with the plea agreement.

In response, the state argues that the rules of practice require merely that the trial court substantially comply

the defendant's attorney filed a written motion to withdraw his appearance. That motion was also denied by the court.

[3] Practice Book § 39-20, formerly § 712, provides: "Ensuring That the Plea Is Voluntary

"The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

[4] In the alternative, the defendant argues that the trial court did not "substantially comply" with Practice Book § 712.

with § 712. Accordingly, the state argues that the judgment should be affirmed because the trial court substantially complied with § 712 when the trial court asked the defendant, "Is this plea voluntary?" and, "Is that what you want, sir?" We disagree.

We first address the state's argument that Practice Book § 39-20, formerly § 712, requires only substantial compliance under the controlling case law. It is true that both our Supreme Court and this court often rely on *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), for the proposition that "[a] defendant can voluntarily and understandingly waive these [constitutional] rights without literal compliance with the prophylactic safeguards of Practice Book §§ 711 and 712." In *Badgett*, however, the reference to § 712 is dicta because the opinion did not determine whether the plea was voluntary and not the result of threats or force. *Badgett* was concerned with determining the adequacy of the plea canvass where the trial court had neglected to explain to the defendant one of the items *enumerated in Practice Book § 711*. See *State* v. *Domian*, 235 Conn. 679, 686–87, 668 A.2d 1333 (1996); *State* v. *Badgett*, supra, 418; *State* v. *Godek*, 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). Because "a case or a series of cases which merely mention or apply a statute without questioning its validity cannot serve as binding precedent on that issue. See *Finn* v. *Planning & Zoning Commission*, 156 Conn. 540, 544, 244 A.2d 391 [1968]"; *State* v. *DellaCamera*, 166 Conn. 557, 560, 353 A.2d 750 (1974); we must consider whether a substantial compliance standard applies to Practice Book § 712, now § 39-20.

Our Supreme Court has also used a "substantial compliance" standard in cases where it was addressing whether the trial court improperly denied the defendant's motion to withdraw a plea under Practice Book

§ 721 (1), now § 39-27 (1). See *State* v. *Greco*, 216 Conn. 282, 287–88, 579 A.2d 84 (1990); *State* v. *James*, 197 Conn. 358, 361–62, 497 A.2d 402 (1985). The "substantial compliance" standard comports with the language of Practice Book § 721 (1)[5] as it relates to Practice Book § 711, and is therefore appropriate when determining whether the mandates of Practice Book § 711 have been complied with. In this case, however, it is appropriate to determine whether the trial court improperly denied the defendant's motion to withdraw the plea under Practice Book § 721 (2). To do so, we must determine whether the plea was voluntary, to wit, whether it was properly accepted pursuant to Practice Book § 712.

The defendant's claim that Practice Book § 712 should be strictly complied with is supported by the case law. "Connecticut's rules of practice sanction plea agreements within certain specified parameters. Such rules of criminal procedure are intended to safeguard the due process rights of an accused. *Shorette* v. *State*, 402 A.2d 450, 457 (Me. 1979). Penal statutes and criminal procedural rules are to be strictly construed in order to protect fundamental constitutional rights. *State* v. *Cook*, 183 Conn. 520, 522, 441 A.2d 41 (1981)." *State* v. *Schaeffer*, 5 Conn. App. 378, 382, 498 A.2d 134 (1985).

"Because it cannot be presumed from a silent record that the decision to plead guilty was the product of the defendant's full understanding of what the plea connotes and of its consequences; *Boykin* v. *Alabama*, [395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)]; the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional rights [implicated by

---

[5] Practice Book § 39-27, formerly § 721, provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19 [formerly § 711];

"(2) The plea was involuntary . . . ."

the guilty plea]. *State* v. *Badgett,* supra, 200 Conn. 418. To ensure that this constitutional requirement is satisfied, the trial court is obliged to comply with the dictates of Practice Book §§ 711 [now § 39-19] and 712 [now § 39-20], which enumerate the responsibilities of the court in conducting the plea canvass." (Internal quotation marks omitted.) *State* v. *Domian,* supra, 235 Conn. 686–87.

Section 39-20, formerly § 712, requires that the judicial authority ensure that the plea is voluntary. Specifically, Practice Book § 39-20, formerly § 712, provides: "Ensuring That the Plea Is Voluntary

"The judicial authority *shall not* accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary *and* is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his counsel." (Emphasis added.)

The resolution of this appeal turns on the requirements of the rules of practice when applied under the rule of strict construction and whether the record supports the conclusion that these requirements were complied with. " 'The rules of statutory construction apply with equal force to Practice Book rules' "; *State* v. *Schaeffer,* supra, 5 Conn. App. 384; therefore, it is appropriate for the court to look to the rules of statutory construction to determine the requirements of Practice Book § 712. The title shows that the purpose of that rule is to indicate what the court must do to ensure that the plea is voluntary.[6] The first sentence mandates

---

[6] Unlike the titles in the General Statutes, which are not voted as part of the statute, Practice Book section titles are an appropriate consideration when the purpose of the section is at issue. This is so because at the time

that the court *shall not* accept a plea of guilty without addressing the defendant personally and in open court and without making three determinations. The court shall determine (1) that the plea is voluntary, (2) that the plea is not the result of force or threats or of promises apart from a plea agreement, and (3) whether the defendant's willingness to plead guilty results from discussions with the state and the defendant or his attorney.

"The use of the word shall, though significant, does not invariably create a mandatory duty . . . . *Weiss* v. *Newtown,* 4 Conn. App. 200, 203, 493 A.2d 273 (1985), quoting *Tramontano* v. *Dilieto,* [192 Conn. 426, 433–34, 472 A.2d 768 (1984)]. We determine whether a [rule of practice][7] is mandatory or directory by testing whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the [rule of practice] is mandatory. . . . If, however, the [rule of practice] is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . *In re Adrien C.,* 9 Conn. App. 506, 510, 519 A.2d 1241, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987), quoting *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985)." (Internal quotation marks omitted.) *Brown* v. *Smarrelli,* 29 Conn. App. 660, 663–64, 617 A.2d 905, cert. denied, 225 Conn. 901, 621 A.2d 284 (1993).

We are persuaded by the defendant's argument that the language used by the trial court, "Is this plea volun-

that the Superior Court judges adopt the individual sections, they also adopt the title of the section. See Practice Book § 1-9.

[7] The test to determine whether a statute is mandatory or directory is also applicable to rules of practice. See *Rowe* v. *Godou,* 12 Conn. App. 538, 543, 532 A.2d 978 (1987), rev'd on other grounds, 209 Conn. 273, 550 A.2d 1073 (1988).

tary?" would not have evoked a response from the defendant as to whether any promises had been made apart from the plea agreement. "When a defendant tenders a plea of guilty . . . one important responsibility of the court is to determine whether the plea is voluntary. Consistent with the Supreme Court's standard as to what constitutes a voluntary plea, this means the court will inquire whether the tendered plea was the result of any threats or promises." 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 20.4 (b), p. 639. Because the purpose of Practice Book § 712 is to ensure that a plea is voluntary and that it is not the result of threats or force, we hold that the use of the word "shall" in Practice Book § 712 is a "matter of substance" and is, therefore, mandatory.

"[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." (Internal quotation marks omitted.) *State* v. *Ayala*, 222 Conn. 331, 346, 610 A.2d 1162 (1992). We therefore hold that Practice Book § 712 requires that the court ensure that the plea is not the result of force or threats or of promises apart from a plea agreement.

An examination of the record, including close scrutiny of the transcripts, reveals that the trial court failed to ask if the defendant's guilty plea was "the result of force or threats or of promises apart from a plea agreement." The trial court clearly inquired as to whether the plea was voluntary when it asked, "Is this plea voluntary?" and, "Is that what you want, sir?" There is nothing in the record that indicates that the trial court determined that the plea was not the result of force or threats or of promises apart from a plea agreement. To conclude that the trial court's questions in this case adequately comport with the mandates of Practice Book § 712 would be to conclude that the phrase in it that reads, "and is not the result of force or threats or of

promises apart from a plea agreement," is insignificant and unnecessary. We decline to do so.

We conclude, under the facts of this case, that the trial court did not comply with the mandate of Practice Book § 712 and, therefore, that the trial court improperly denied the defendant's motion to withdraw his pleas.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to withdraw his plea and for further proceedings according to law.

In this opinion SPEAR, J., concurred.

SHEA, J., dissenting. I disagree with the conclusion reached in the majority opinion that the judgment must be reversed because of the failure of the trial court to inquire further whether the plea was the result of force or threats or of promises apart from a plea agreement, after the defendant had responded affirmatively during the plea proceeding to the court's question, "Is this plea voluntary?" That holding is based on the view that Practice Book § 712, now § 39-20, which provides that the court, before accepting a guilty plea, must determine, by addressing the defendant personally, "that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement," requires strict compliance, unlike Practice Book § 711, now § 39-19, which requires only substantial compliance. I believe that the majority opinion departs significantly from precedent that has heretofore been regarded as controlling.

In considering the effect of the trial court's failure to inform a defendant of the mandatory minimum sentence for the crime to which he had pleaded guilty, as required by Practice Book § 711 (2), our Supreme Court has declared that "that fact alone is not dispositive of

the defendant's constitutional claim. We must determine, instead, whether, in light of all of the circumstances evident from the record before us, the trial court's failure to inform the defendant of the statutorily required minimum sentence rendered his guilty plea unknowing or involuntary." *State* v. *Domian*, 235 Conn. 679, 687–88, 668 A.2d 1333 (1996). "A defendant can voluntarily and understandingly waive [his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers] without literal compliance with the prophylactic standards of Practice Book §§ 711 and 712." *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). "Not every deviation from the specific requirements of a Practice Book rule necessitates reversal." *State* v. *Suggs*, 194 Conn. 223, 226–27, 478 A.2d 1008 (1984). "[W]here there has been a substantial compliance with [Practice Book § 711], such that none of the defendant's constitutionally protected rights has been infringed upon, the failure to comply with each and every requirement of [Practice Book § 711] does not automatically require the vacating of the defendant's plea." *State* v. *Godek*, 182 Conn. 353, 360, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

Although the cases cited involve deviations from the script of Practice Book § 711 rather than Practice Book § 712, I perceive no good reason to distinguish between them with respect to whether the applicable standard of compliance should be strict or substantial. Both provisions relate to the waiver by a defendant in a criminal case of significant constitutional rights.

The trial court accepted the defendant's guilty plea in this case only after a lengthy and careful interrogation of the defendant concerning his understanding of each of the items set forth in Practice Book § 711, including the privilege against self-incrimination, trial by jury and

confrontation of witnesses, which are characterized in *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), as the "core" constitutional rights that a defendant must waive before his guilty plea may be accepted. The trial court went far beyond the requirements of Practice Book §§ 711 and 712 in ascertaining from the defendant the circumstances involving his participation in the offenses charged and advising him of the consequences of his plea with respect to forfeiture of money seized by the police and possible revocation of his probation. The only deficiency was the court's failure, after the defendant had responded affirmatively to the question whether his plea was voluntary, to inquire whether the plea was the result of force or threats or promises apart from a plea agreement. Although undoubtedly prophylactic, that additional inquiry is essentially redundant of the prior voluntariness inquiry pursuant to Practice Book § 712. In this case, it is reasonable to infer that the defendant would not have responded affirmatively to a further question about threats or promises, because no such claim was made when he moved to withdraw his plea in the trial court. I am not inclined to reverse a judgment simply on the ground of a technical deficiency in the acceptance of the guilty plea that the record in this case indicates had no impact on the defendant's decision to plead guilty.