## STATE OF CONNECTICUT *v.* ANDREW NELSON
### (AC 20564)

Lavery, C. J., and Schaller and Daly, Js.

---

Argued September 10—officially released December 4, 2001

*Glenn M. Conway*, with whom, on the brief, was *Tara L. Knight*, for the appellant (defendant).

*Ronald Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Eugene Calistro*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Andrew Nelson, appeals from the judgment of conviction rendered by the trial court after his plea of guilty to the charge of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b). On appeal, the defendant claims that the court improperly denied his motion to withdraw his guilty plea because (1) the court's canvass of the defendant did not ensure that

the plea was given voluntarily, (2) he was denied the effective assistance of counsel in the plea process and (3) he received a greater sentence than that for which he had bargained. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The defendant was charged with possession of a controlled substance in violation of General Statutes § 21a-279 (b), possession of a controlled substance with intent to sell in violation of § 21a-277 (b) and possession of a controlled substance with intent to sell within 1500 feet of a school in violation of § 21a-279 (d).

On August 31, 1999, the defendant, represented by a public defender, came before the trial court after reaching a plea agreement with the state and pleaded guilty to possession of a controlled substance with intent to sell in violation of § 21a-277 (b). Before accepting the defendant's plea, the trial court canvassed the defendant pursuant to Practice Book §§ 39-19 through 39-21. The court concluded that the defendant's plea was knowing, voluntary and made with the assistance of counsel. The state and the defendant informed the trial court that in exchange for the guilty plea, the state would recommend a four year sentence with execution suspended after two years as a cap, the right to argue for a suspended sentence and three years probation. The state and the defendant also had agreed that the state would recommend a completely suspended sentence if the defendant cooperated with police between the plea date and sentencing, had no new arrests in that time, showed up for court and had a good presentence investigation report. The trial court was unaware of that additional agreement.

After several continuances and a change of counsel, the defendant filed a motion to withdraw his plea in which he claimed that his plea was involuntary because

he was not fully canvassed with respect to the agreement and that the plea was made without the effective assistance of counsel. The defendant asserted that he believed that he would receive a suspended sentence if he met the conditions in the agreement between the time of his plea and the sentencing date. This "belief" arose from an alleged "promise" that the defendant claimed his attorney had made regarding the plea agreement.

The trial court denied the defendant's motion as to both claims. With regard to the claim that the plea was involuntary, the court determined that the plea canvass was adequate and the plea was made voluntarily. The trial court also denied the motion as to the ineffective assistance of counsel claim after an evidentiary hearing, finding that the evidence did not support the defendant's assertion that his attorney had made the promise that the defendant claimed he made. The trial court sentenced the defendant to four years in prison, execution suspended after one year. This appeal followed.

I

The defendant's first claim is that the court improperly denied his motion to withdraw the guilty plea in violation of Practice Book § 39-27 (2) because the plea was involuntary.[1] The defendant claims that this denial was improper because the court failed to comply substantially with Practice Book § 39-20, which requires the trial court to be certain that a plea is given voluntarily.[2] Specifically, the defendant claims the court did not determine that the plea was voluntary because it did

---

[1] Practice Book § 39-27 (2) provides in relevant part that a defendant may withdraw a guilty plea if it was involuntary.

[2] Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of guilty . . . without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. . . ."

not inquire whether any promises had been made to the defendant to induce his plea. We are not persuaded.

We first note our standard of review for this issue. "Practice Book § [39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered. [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 505–506, 752 A.2d 49 (2000).

The defendant has asked this court to decide whether the trial court substantially complied with Practice Book § 39-20 when its only inquiry concerning voluntariness was, "Were you forced to enter this plea?" The defendant contends that the court did not learn the complete terms of the plea agreement because it failed to ask the defendant whether any other promises had been made. As a result, the defendant contends that his plea was involuntary because it did not take into account the complete plea agreement.

While this exact question has not been decided, we do not write on a clean slate with regard to compliance with Practice Book § 39-20, as both this court and our Supreme Court recently have addressed this issue. In *State* v. *Ocasio*, 50 Conn. App. 748, 753–54, 718 A.2d 1018 (1998), rev'd, 253 Conn. 375, 751 A.2d 825 (2000), we determined that literal compliance with Practice Book § 39-20 is necessary. In *Ocasio*, the trial court asked the defendant during his plea canvass whether the plea was voluntary, to which the defendant answered, " 'Yes.' " Id., 750. Thereafter, the court accepted the defendant's plea as voluntary. Subse-

quently, the defendant filed a motion to withdraw his plea, claiming the trial court had failed to ensure that the plea was voluntary. Id., 750–51.

After the trial court denied that motion, the defendant appealed, claiming that to comply with Practice Book § 39-20, a trial court must inquire not only as to the voluntariness of the plea, but also as to whether the plea was the result of threats, force or promises apart from the plea agreement. Id., 751. We agreed, concluding that to comply with the mandate of § 39-20, a trial court's plea canvass must ensure that the plea is not the result of force or threats or promises. Id., 756.

Our Supreme Court, however, reversed our decision in *State* v. *Ocasio*, 253 Conn. 375, 380, 751 A.2d 825 (2000), concluding that "only substantial, rather than literal, compliance with § 39-20 is required in order to validate a defendant's plea of guilty."

After holding that the voluntariness of a plea does not depend on strict compliance, our Supreme Court enunciated a test for substantial compliance with Practice Book § 39-20. Id., 380. "[T]he test for substantial compliance is whether, in light of all of the circumstances, the trial court's literal compliance with § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." Id. In assessing the circumstances surrounding the trial court's decision, the Supreme Court noted that the trial court had thoroughly canvassed the defendant, that the defendant had stated that his plea was voluntary and that there was nothing in the record to suggest that the defendant would have responded affirmatively if asked whether the plea was the result of force, threats or promises apart from the plea agreement. Id., 381.

In light of *Ocasio*, we must apply the substantial compliance test, as directed by our Supreme Court, to determine whether the trial court in the present case

substantially complied with § 39-20 when it canvassed the defendant. We conclude that under the circumstances, the court's canvass did substantially comply with Practice Book § 39-20.

The record in this case, as in *Ocasio*, reflects that the trial court's canvass was thorough. The court first ascertained the underlying factual basis for the plea, and the state recited the agreement to the trial court. The state represented the agreement as follows: "The state's recommendation . . . is four years suspended after two years, as a cap with a right to argue for a suspended sentence, three years probation. This will require a presentence investigation."[3]

The trial court then continued the canvass and asked the defendant if he had consumed anything that might interfere with his ability to make a decision. The defendant responded, "No." The court asked if the defendant had had enough time to discuss the matter with counsel and if the evidence against the defendant had been discussed. The defendant answered, "Yes." The court then inquired if the defendant knew what constitutional rights he was surrendering. Again, the defendant acknowledged, "Yes." Following that, the court informed the defendant of the maximum and minimum penalties to which he was exposed. The court asked if the defendant understood that, and the defendant responded, "Yes."

The court next recited its understanding of the plea agreement to the defendant, stating: "There is an agreement four years suspended after two as a cap and three years probation. The state will be arguing for a maximum of two years and your attorney will be arguing

---

[3] As stated previously, the agreement also had a conditional aspect that was contingent on the defendant's postplea conduct, the specific conditions of which the court was unaware.

for a lesser sentence. Do you understand that?" The defendant answered, "Yes."

The trial court then asked the defendant, "Were you forced to enter this plea?" The defendant responded, "No." The court also asked the attorneys if they knew of any reason why the plea should not be accepted, to which they responded that they did not. Thereafter, the court determined that the plea was voluntary, accepted the plea of guilty and set a sentencing date.

The record in this case also establishes that, as in *Ocasio*, the defendant here did acknowledge that his plea was voluntary. In this case, however, the trial court's question that establishes this fact was shaped to elicit a negative response. Specifically, the defendant said, "No," when asked if he was forced to enter the plea. This is in contrast to *Ocasio*, in which the trial court asked the question in a form that received a positive reply, namely, "Is the plea voluntary?", to which the defendant in that case answered, "Yes." The difference is in style and not substance. Both queries established that the pleas were entered voluntarily and without force.

Moreover, the record in this case, which is similar to that in *Ocasio*, is devoid of any indication that the defendant would have responded affirmatively if asked specifically if the plea was the result of force, threats or promises. In the initial stages of the plea entry, the state's attorney explained the plea agreement to the court. The defendant did not make any comment to the court or to his attorney at that point. Soon after that, as part of the actual canvass, the trial court specifically explained what its understanding of the plea bargain was in its colloquy with the defendant. The defendant did not question or contradict the trial judge's version of the agreement or interrupt the proceeding to confer with counsel.

We are not persuaded by the defendant's argument that, although he made no objection after hearing two accounts of the plea agreement that he now claims were inconsistent with his own understanding, he would have spoken up if the trial court simply had asked him if the plea was the result of force, threats or promises. In light of all the circumstances, the court's literal compliance with Practice Book § 39-20 would not have made any difference in the court's determination that the plea was voluntary. We conclude that the court's plea canvass did substantially comply with § 39-20. Having substantially complied with the rules of practice, the court did not abuse its discretion in denying the defendant's motion.

## II

The defendant's second claim is that the court improperly denied his motion to withdraw the guilty plea in violation of Practice Book § 39-27 (4) because he was denied the effective assistance of counsel.[4] The defendant claims that his trial counsel was ineffective because he made a promise concerning sentencing that he did not and could not keep, which the defendant relied on when pleading. The defendant also claims that his counsel was ineffective because he did not disclose the conditional part of the plea agreement to the trial court when it became clear at the plea hearing that the trial court was not aware of it.

## A

The defendant asserts that his attorney "promised" him a completely suspended sentence if he complied with the conditions established in the agreement that was made with the state when counsel in fact had no

[4] Practice Book § 39-27 (4) provides that a defendant may withdraw a guilty plea if the plea results from the denial of the effective assistance of counsel.

authority to ensure that result.[5] The defendant argues that he was denied the effective assistance of counsel because he was induced to plead guilty by a promise that his attorney could not be certain of fulfilling. We do not agree.

Again, we note that our standard of review is abuse of discretion for decisions on motions to withdraw guilty pleas brought under Practice Book § 39-27. See *State* v. *Andrews*, supra, 253 Conn. 505–506. We further note the pertinent case law applicable to ineffective assistance of counsel claims brought under § 39-27 (4). Our case law holds that "[a] claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea. A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance." (Citation omitted; internal quotation marks omitted.) *State* v. *Gray*, 63 Conn. App. 151, 161–62, 772 A.2d 747, cert. denied, 256 Conn. 934, 776 A.2d 1151 (2001).[6]

---

[5] Though not articulated in the defendant's brief, for this claim to make sense, the "promise" in issue here must actually consist of two guarantees. The first is the attorney's guarantee that the state would indeed live up to its end of the bargain and recommend a suspended sentence if the defendant met the conditions in the agreement. The second is counsel's guarantee that the trial court would follow that recommendation.

[6] While the transcript indicates that the trial court and counsel for both sides agreed that the proper standard for addressing the ineffective assistance of counsel claim was the well known *Strickland* test; *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); we apply

In deciding whether the defendant has met the first prong of the test articulated in *Gray* for ineffective assistance of counsel claims, we must assess his attorney's performance to determine if it was within the normal range of competence of a practitioner in this situation. Id., 161. With regard to the first prong, the issue is not whether it is inappropriate for counsel to promise or guarantee a client that the trial court will impose a specific sentence. This is clearly improper because it is well settled that final sentencing authority lies in the province of the trial court. Rather, the issue is whether the defendant's attorney did in fact make such a promise. After an evidentiary hearing on the ineffective assistance of counsel claim, the trial court determined that no such promise had been made.

It appears from the transcript that the court found that the only "promise" made to the defendant by his attorney was that if the defendant complied with the conditions, then the state would indeed follow the agreement and recommend a suspended sentence to the court.[7]

In making this determination and denying the defendant's motion to withdraw because of ineffective assistance of counsel, the court referred to two specific pieces of evidence. First, the court rejected the testimony of attorney Mark Welsh, the public defender who had represented the defendant up to and during the plea hearing and who was called as a witness at the evidentiary hearing.[8] The court stated that his testimony about the promise to the defendant was contrary to his

the test articulated in *Gray*, which is essentially the same test, but is more finely tailored to claims brought pursuant to Practice Book § 39-27 (4).

[7] As stated in footnote 5, this apparently is one of the two alleged guarantees that culminated in the "promise" that the defendant claims his attorney made to him.

[8] Welsh indicated in an affidavit that he had promised the defendant a suspended sentence if he complied with the agreement's terms.

testimony about how he has advised all his other clients when a plea is made. If the court were to accept his testimony about the promise, it would have to accept the proposition that this was the only case in which Welsh, an experienced defense attorney, had assured a defendant of what the court would do.

In addition, though not directly stated by the court, it appears from the transcript of the court's own examination of Welsh that it felt that Welsh's statements to the defendant amounted to something more akin to an opinion or prediction about the likely sentence, as opposed to an absolute guarantee. The court reached this conclusion after it had determined that Welsh himself knew the court was the final authority on the sentence to be imposed and that Welsh had indeed made it clear to the defendant that the court would make the final decision on the sentence. The court also ensured that Welsh had explained to the defendant what the maximum penalty was for the crime. Convinced that both Welsh and the defendant were aware that the court would decide what the sentence would be and what it could be, the court refused to credit Welsh's testimony about his promise as a sentence guarantee.

Because Welsh took the stand as a witness, the court was required to weigh the credibility of his testimony. The court having done so, we must rely on that finding. We repeatedly have held that "credibility is a matter for the trier of fact to determine. In a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . On appeal . . . [a] factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evi-

dence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) Id., 160–61.

We see nothing in the court's determination that is clearly erroneous. Our review of the transcript indicates that Welsh's testimony about the alleged promise reflects a degree of uncertainty. The court's evaluation of the evidence was a fair interpretation.

Second, the court revisited the initial plea canvass and reviewed the defendant's conduct during the entry of the plea. The court noted that the defendant did not take issue with the plea agreement as it was recited to him and voluntarily entered his plea. Moreover, the court noted the fact that in the canvass, it had recited to the defendant the number of years that the plea allowed for, as well as the fact that the state's attorney would be arguing for the maximum and defense counsel for less. The court stated that despite the claim of a guarantee, the defendant was aware of the maximum sentence to which he was exposed.

Because the trial court found that the "promise" that the defendant claims counsel made actually was not made,[9] we conclude that the defendant has failed to meet the first prong of the *Gray* test for ineffective assistance of counsel claims. We therefore need not consider the second prong. We conclude that the trial court did not abuse its discretion in denying the defen-

---

[9] As the previous discussion and footnotes 5 and 7 show, the court determined that Welsh had not given both of the guarantees that would together comprise the "promise" that the defendant alleged was made to him. Specifically, it seems that the trial court was not persuaded that Welsh made the second guarantee that assured the defendant of what the court would ultimately do.

dant's motion to withdraw his plea based on ineffective assistance of counsel.

## B

The defendant also argues that he received ineffective assistance of counsel at the plea hearing because Welsh did not explain the conditional agreement that the defendant had made with the state to the court after the court had explained its understanding of the plea agreement but failed to mention any conditions.

Again, we apply the two-pronged test in *Gray* for ineffective assistance of counsel claims. Id., 161–62. In applying the first prong, we must determine whether a failure to inform the trial court about the conditional agreement falls outside the range of what a competent lawyer in the same circumstances would have done. While we note that it clearly would have been appropriate to inform the trial court about the conditional agreement, we need not decide this because the defendant so clearly fails to meet the second prong under the circumstances of this case.

In applying the second prong, we must determine if there is such an interrelationship between Welsh's nondisclosure and the defendant's plea that we can say that the defendant's guilty plea was not voluntarily and intelligently made because of Welsh's failure to inform the court about the conditional agreement. On the basis of the facts of this case, we conclude that despite the nondisclosure, the plea was voluntarily and intelligently made. Therefore, Welsh's failure to inform the court about the conditional agreement does not constitute ineffective assistance of counsel. We reach this result after examining the plea that the defendant entered and the undisclosed agreement.

Although Welsh's failure to disclose the full plea agreement was not proper, it does not constitute inef-

fective assistance of counsel because the defendant entered a plea that exposed him to a maximum of two years in prison. Having done so, the defendant agreed to subject himself to any sentence up to that maximum term that the trial court deemed appropriate in its discretion. The additional agreement, regardless of the fact that it was not disclosed, involved only the state's recommendation to the court to suspend the defendant's sentence if he met certain conditions. It did not in any way relate to or affect the maximum potential sentence that the defendant agreed to allow the court to impose on him.

The second prong of the *Gray* test requires that an interrelationship exist between counsel's conduct and the defendant's plea such that we can conclude that the plea was involuntary because of what counsel did. We do not have such an interrelationship here because Welsh's conduct in failing to disclose the conditional agreement related only to the state's recommendation, while the defendant's plea related to the maximum amount of jail time to which he was willing to expose himself as a consequence for pleading guilty. Those aspects of the plea agreement are unrelated. The undisclosed agreement went to the best possible sentence that the defendant could receive if the trial court agreed to follow the state's recommendation. The defendant's plea focused on what he would accept if the court ultimately rejected that recommendation.

Because the focus of Welsh's nondisclosure and that of the defendant's plea were different and because the two had no bearing on each other, we conclude that the necessary interrelationship does not exist between them. We therefore cannot say that the plea was not voluntary and intelligent because of Welsh's failure to inform the court about the conditional agreement. As a result, we do not agree with the defendant's assertion

that he had ineffective assistance of counsel at the plea hearing.

We conclude that the court did not abuse its discretion in denying the defendant's motion to withdraw his plea based on ineffective assistance of counsel.

## III

The defendant's final claim is that the court improperly denied his motion to withdraw the guilty plea after it imposed a sentence on the defendant that was greater than the one for which he had bargained. In this claim, the defendant argues first that he did not get the benefit of his bargain because the court was not aware of the conditional agreement that the state would recommend a suspended sentence. Second, the defendant asserts again that his plea was involuntary because he did not have knowledge of the sentencing possibilities beyond those that his attorney had provided.

Because we have fully addressed and decided these claims in parts I and II of this opinion, it is unnecessary to address them further.

The judgment is affirmed.

In this opinion the other judges concurred.