STATE OF CONNECTICUT *v.* WALTER
LAVELL SUTTON
(AC 25959)

McLachlan, Harper and Peters, Js.

Argued February 16—officially released April 25, 2006

*Mary F. Boehlert*, special public defender, for the appellant (defendant).

*Lawrence J. Tytla*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Walter Lavell Sutton, appeals from the judgment of conviction rendered by the trial court after the defendant entered a guilty plea under the *Alford* doctrine[1] to assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[2] The defendant claims that the court improperly denied his motion to withdraw his plea because of claimed ineffective assistance of counsel. We disagree and affirm the judgment of the trial court.

The charge arose out of the alleged shooting of Valdez Madry on July 13, 2002, at approximately 2 a.m. in New London.[3] The defendant retained private counsel,

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), holds that a criminal defendant need not admit his guilt but may consent to being punished as if he is guilty to avoid the risk of proceeding at trial.

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ."

[3] The defendant was originally charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1), use of a firearm in the commission of a class A, B or C felony in violation of General Statutes § 53-202k and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).

Michael A. Blanchard, in connection with the charge. On June 22, 2004, the defendant entered a guilty plea under the *Alford* doctrine to count one of the substitute information charging him with assault in the first degree. On or about August 9, 2004, the defendant filed a pro se motion to withdraw his guilty plea.

The court appointed a special public defender to represent the defendant in the motion to withdraw the guilty plea. The defendant filed an amended motion to withdraw the guilty plea pursuant to Practice Book § 39-26 on August 19, 2004, claiming that the plea had not been made in a voluntary and knowing manner due to Blanchard's ineffective assistance. On September 13, 2004, the defendant's supporting memorandum of law claimed that Blanchard was ineffective because he failed to investigate the case, to prepare a defense for trial, to locate and to interview alibi witnesses, and to provide the defendant with police reports and witness statements. The defendant claims that all of this resulted in his not being fully informed of the evidence against him and, therefore, he could not knowingly make an intelligent decision as to whether to continue with his not guilty plea.

On September 27, 2004, the court held a hearing on the defendant's motion to withdraw his plea. The special public defender represented the defendant at this hearing. The defendant offered evidence from himself and Blanchard. The state offered no evidence. At the hearing, the defendant testified that he was arrested in North Carolina on July 27, 2002, and charged with the assault, which occurred on July 13, 2002. He testified that he was working and living with an uncle in North Carolina on July 13, 2002, and denied shooting the victim. He testified that he did not know the victim and that he had never been convicted of a crime.

The defendant also testified that during the almost two years that he was represented by Blanchard,

Blanchard had met with him approximately twice a month and had not discussed the case with him, but instead focused on when Blanchard would be paid. The defendant claimed that he entered his guilty plea on June 22, 2004, because he believed that legally he did not have any other choice. He claimed that Blanchard had not explained to him what was occurring in the case, nor had he shown him the evidence that the state claimed to have against him, except one photograph of him, a hat that the attacker had dropped as he left the scene, which the defendant asserted was not his, and a set of cosmetic teeth caps that the defendant had lost long ago, but which were found near the scene. The defendant testified that Blanchard had urged him to plead guilty, as he would be tried by a tough judge and would likely be sentenced to twenty years incarceration.

The defendant also claimed that Blanchard had permission to take a DNA sample from him. Blanchard had told him that the state's DNA test did not link him to the hat, but it did link him to the cosmetic teeth caps found at the scene. As to those caps, the defendant admitted that he had worn them while his photograph was taken at the bar in front of which the assault had occurred. That photograph, which was part of the state's evidence, had purported to show the defendant with what looked to be a gun handle sticking out of the waistband of his pants. While the defendant admitted that he had posed for the photograph, he claimed that the object in the waistband of his pants was a cigarette lighter in the shape of a gun.

The defendant further testified that he told Blanchard that he was in North Carolina at the time of the shooting and that Billy Jones, his uncle, and Rachel Tate, Tobias Artis, Anne Gavin, Maxine Royal and Demetrius Royal could all corroborate his whereabouts. He testified that Blanchard did not contact any of the witnesses or any

other potential alibi witnesses. He claimed that Blanchard did not do this because he could not pay Blanchard his required fee. The defendant claimed that Blanchard previously had tried to withdraw from the case because he was "unable to flesh out and respond to the notice of alibi because of the defendant's failure to meet with him." Blanchard's motion to withdraw was denied by the court on November 1, 2002, on the ground that there was not sufficient legal reason to allow Blanchard to withdraw from the case.

Blanchard testified that, at their first meeting, the defendant told him that he could not meet Blanchard's retainer. Blanchard then indicated that he had agreed to a reduced retainer. Blanchard testified that he reviewed the police reports because of the state's open file policy and that he discussed the reports in the file with the defendant. Specifically, Blanchard testified that he talked to the defendant about the photographs that were taken of him at a party, the state's DNA results, the statements from two witnesses claiming that the defendant was at the bar on the night of the incident in question, the photograph of him with what appeared to be a gun in his waistband, which was taken months before the incident, and the DNA results that connected the defendant to the teeth but not to the hat. Blanchard testified that he would not hire an independent DNA expert to review the testing results until the defendant paid him additional money. Blanchard testified that he explained to the defendant that the victim could not identify him, but that he had relied on the statements of the bar owner, Edward Brionnes, and the victim's cousin, Joaquim Madry, whose statements put the defendant at the bar. Blanchard testified that he did not hire an investigator, that he did not attempt to speak to anyone who witnessed the shooting, and that he did not give copies of witness statements and police reports to the defendant because he did not ask for

them. Blanchard testified that he filed a notice of alibi with the court containing the names and addresses of the defendant's witnesses, as the defendant claimed to be in North Carolina at the time of the shooting. Blanchard testified that he did not speak to any defense witnesses and made no effort to contact them. Blanchard did testify that he had a discussion with the state about securing out-of-state subpoenas in order to secure attendance of the alibi witnesses, but did not issue the subpoenas. Blanchard also testified that he continually indicated that he was willing to go to trial and that the defendant adamantly rejected all offers from the state to plead guilty until the night before the trial was to commence, after a jury had been selected.

On the day when the evidence was to commence at the trial, the defendant pleaded guilty, pursuant to a plea agreement, under the *Alford* doctrine. At the plea hearing, in the presence of the defendant, the prosecutor recited the factual basis for the plea, including a summary of the evidence and the factual basis of the crime to which the defendant was being put to plea. The state's evidence included two eyewitnesses identifying the defendant as the shooter, and a third who identified the shooter by his clothing and distinctive tooth covering. A tooth cover consistent with one that the defendant had been observed wearing was found at the scene. DNA from the tooth cover was identified as being that of the defendant. In addition, the defendant had been seen at a party at the club adjacent to where the shooting occurred; a photograph was taken at the party that showed him with a pistol tucked in his waistband. The pistol was consistent with the description and caliber of the pistol used at the shooting. After the recitation, the court conducted an oral canvass of the defendant's *Alford* plea, noting that a jury already had been selected to hear the case. The court emphasized

to the defendant the finality of his decision to enter his plea.

After a hearing, the court denied the defendant's motion to withdraw his plea, noting that at the time of the plea canvass the defendant specifically had affirmed that he had sufficient time to speak with counsel and was satisfied with his advice. The court found Blanchard's testimony more credible than the defendant's testimony and concluded that Blanchard had done "everything that a reasonable professional attorney would under the circumstances." The court noted that the state had a very strong case and that the defendant had entered a plea on the eve of trial. After denying the motion, the court imposed a sentence in accordance with the plea agreement. This appeal followed.

"Practice Book § [39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered. [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 505–506, 752 A.2d 49 (2000).

"[A] claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea. A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must prove that the assistance was not within the range of competence displayed by law-

yers with ordinary training and skill in criminal law.
. . . Second, there must exist such an interrelationship
between the ineffective assistance of counsel and the
guilty plea that it can be said that the plea was not
voluntary and intelligent because of the ineffective
assistance." (Internal quotation marks omitted.) *State
v. Nelson*, 67 Conn. App. 168, 177, 786 A.2d 1171 (2001).

At the defendant's hearing on his motion to withdraw
his plea, the court found both that Blanchard was not
ineffective and that the plea was voluntary and intelli-
gent. Thus, the defendant failed to satisfy either prong
of the test for withdrawing a plea due to ineffective
assistance of counsel. The court specifically found that
Blanchard had done "everything that a reasonable, pro-
fessional attorney would under the circumstances," that
the state had a very strong case and that the plea,
entered into by the defendant on the eve of trial, was vol-
untary.

On appeal, we generally must accept the court's find-
ings regarding credibility. See *State v. Nelson*, supra,
67 Conn. App. 179. "[T]he trial judge is the sole arbiter
of the credibility of the witnesses and the weight to be
given specific testimony. . . . On appeal . . . [a] fac-
tual finding may be rejected by this court only if it is
clearly erroneous. . . . A finding of fact is clearly erro-
neous when there is no evidence in the record to sup-
port it . . . or when although there is evidence to
support it, the reviewing court on the entire evidence
is left with the definite and firm conviction that a mis-
take has been committed." (Internal quotation marks
omitted.) Id., 179–80.

The record contains sufficient support for the conclu-
sion that the defendant understood the significance of
his *Alford* plea, that he was aware that he was entering
into a plea agreement and that he could not withdraw
the plea once entered without permission of the court.

The record also contains support for the conclusion that the defendant's counsel was not ineffective. Blanchard met with the defendant and went over the state's evidence on several occasions. He also urged the defendant to get information from North Carolina, employment records and the like, to substantiate his claim that he was there at the time of the incident. Furthermore, at no time did the so-called "alibi witnesses" appear to testify or to provide affidavits or other statements to Blanchard or to the court. We conclude that the court did not abuse its discretion by denying the defendant's motion to withdraw his plea.

The judgment is affirmed.

In this opinion the other judges concurred.