# STATE OF CONNECTICUT *v.*
# ANDREW J. SIMINAUSKY
# (AC 28965)

Gruendel, Robinson and Pellegrino, Js.

Argued November 12, 2008—officially released January 6, 2009

*Laljeebhai R. Patel*, special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael J. O'Brien*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Andrew J. Siminausky, appeals from the judgments of conviction rendered following the trial court's denial of his motion to withdraw his guilty pleas. On appeal, the defendant claims that he did not enter knowing, intelligent and voluntary guilty pleas because his decision to plead guilty pursuant to

a plea agreement was influenced by promises made by his attorneys outside of that agreement. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. On November 29, 2006, as a result of a plea agreement, the defendant pleaded guilty under the *Alford* doctrine[1] to four counts of robbery in the first degree pursuant to General Statutes § 53a-134 and admitted to a violation of probation pursuant to General Statutes § 53a-32.[2] Shortly thereafter, on December 5, 2006, the defendant pleaded guilty under the *Alford* doctrine to an additional count of robbery in the first degree.[3] On January 18, 2007, the defendant filed a motion to withdraw his pleas. After a full hearing, the court denied his motion on April 27, 2007. Subsequently, on June 1, 2007, the court sentenced the defendant to a term of twelve years to serve in prison in conformity with the plea agreement, which permitted the imposition of a prison sentence of not less than ten nor more than fifteen years. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we identify the legal principles and the standard of review relevant to our discussion. "Practice Book § [39-27] specifies circumstances

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The violation of probation arose from a prior conviction in November, 2002, of conspiracy to commit burglary in the third degree and conspiracy to commit larceny in the third degree.

[3] The charges to which the defendant pleaded guilty arose from multiple informations. By information filed under docket number CR-01-0206523-T, the defendant was charged with a violation of probation as a result of his arrest on March 28, 2005. In August, 2006, the defendant was charged, under docket number CR-06-0058967-T, with three counts of robbery in the first degree in connection with three separate incidents occurring in New Haven between August 20 and 28, 2006. The defendant was also charged with one count of robbery in the first degree under docket number CR-06-0237352-T in connection with an incident that occurred in North Haven on August 26, 2006. Finally, the defendant was charged with one count of robbery in the first degree under docket number CR-06-0060634-T in connection with an incident that occurred in West Haven on August 28, 2006.

under which a defendant may withdraw a guilty plea after it has been entered. [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Sutton*, 95 Conn. App. 139, 145, 895 A.2d 805, cert. denied, 278 Conn. 920, 901 A.2d 45 (2006).

In the present case, the defendant sought to withdraw his guilty pleas on the ground that "[t]he plea[s] [were] involuntary, or [were] entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ." Practice Book § 39-27 (2). "[I]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . [The] constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006).

"In order for a plea to be valid, the record must affirmatively disclose that the defendant understands the nature of the charge upon which the plea is entered . . . the mandatory minimum sentence, if any . . . the fact that a statute does not permit the sentence to be suspended . . . the maximum possible sentence . . . and that the defendant has the right to plead not guilty or to persist in that plea if already made, the right to

a trial by a jury or judge, the right to assistance of counsel, the right to confront the defendant's accusers and the right against compelled self-incrimination. . . . The record must further disclose that the plea is voluntary and not the result of threats or promises." (Internal quotation marks omitted.) *State* v. *Samuel*, 94 Conn. App. 715, 718–19, 894 A.2d 363, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006).

A review of the transcript reveals that the defendant was canvassed thoroughly before the court accepted his guilty pleas on November 29, 2006. The defendant was informed of the charges against him and the prima facie elements of each charge. The court explained the consequences of pleading guilty, including the specific implications of a guilty plea under the *Alford* doctrine. Furthermore, the court specifically inquired as to whether anyone had forced or threatened him to plead guilty. The defendant was informed of the maximum penalty, and the prosecuting attorney recounted the evidentiary basis for each charge. Throughout this colloquy, the defendant repeatedly responded affirmatively when asked by the court whether he understood the individual aspects of the plea canvass.

Notwithstanding his affirmations that he understood and agreed with the proceedings that transpired on November 29, 2006, the defendant claims that his pleas were not knowing, intelligent and voluntary because he relied on assurances made by his counsel that were not reflected in the plea agreement. Specifically, the defendant maintains that his counsel promised him that he would be eligible for early release after serving 65 percent of his sentence. He further argues that the court did not inquire as to the possibility of external promises, as required by Practice Book § 39-20, to ensure that his pleas were voluntary.

Practice Book § 39-20 requires that "[t]he judicial authority shall not accept a plea of guilty . . . without

first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from the plea agreement. . . ." In *State* v. *Ocasio*, 253 Conn. 375, 751 A.2d 825 (2000), however, our Supreme Court concluded that "the voluntariness of the plea . . . does not depend on the court's strict compliance with [Practice Book] § 39-20. . . . [O]nly substantial, rather than literal, compliance with [Practice Book] § 39-20 is required in order to validate a defendant's plea of guilty." (Citations omitted.) *State* v. *Ocasio*, supra, 380. Our Supreme Court then enunciated the following test to determine substantial compliance: it must be determined, "whether, in light of all of the circumstances, the trial court's literal compliance with [Practice Book] § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." *State* v. *Ocasio*, supra, 380.

In *State* v. *Nelson*, 67 Conn. App. 168, 786 A.2d 1171 (2001), a case sharing a similar factual predicate with the present appeal, we applied the substantial compliance test set forth in *Ocasio*, and the resulting analysis is instructive. In *Nelson*, we upheld the trial court's decision to deny the defendant's motion to withdraw a guilty plea that the defendant maintained was involuntarily entered. The defendant claimed that he was not properly canvassed by the court because the court did not inquire whether any promises had been made to induce the plea. Id., 171–72. Upon review of the canvass, we determined that the court's inquiry substantially complied with Practice Book § 39-20 despite the fact that it did not specifically inquire about promises made outside the plea agreement. *State* v. *Nelson*, supra, 176. In reaching that conclusion, we noted that the defendant had several opportunities to inform the court that his understanding of the plea agreement differed from the agreement discussed at the proceeding. We further

stated: "[T]he trial court specifically explained what its understanding of the plea bargain was in its colloquy with the defendant. The defendant did not question or contradict the trial judge's version of the agreement or interrupt the proceeding to confer with counsel." Id., 175. Accordingly, we determined that a literal application of Practice Book § 39-20 would not have impacted the trial court's decision that the plea was voluntary because we were not persuaded that the defendant would have spoken up if the trial court had asked if the plea was the result of an external promise not reflected in the plea agreement. *State* v. *Nelson*, supra, 176.

Similarly, in the present case, the defendant had the opportunity to voice an objection if he believed that the plea agreement stated by the court was not reflective of his understanding on the basis of any purported promises made by his counsel. At no point in the proceeding did the defendant object to the characterization of the plea agreement. Specifically, the court stated: "I have indicated to both lawyers a ceiling of fifteen years. That means that you can't get more than fifteen and a floor of ten. I told you this morning, and I told [your counsel] this afternoon that to get your actual floor, you have a tough row to hoe." When asked if he understood this agreement, as stated, the defendant responded: "Yes, I do." Reviewing the canvass in its totality, we are not persuaded that the court's literal compliance would have made any difference in the court's determination that the pleas were voluntary. There is no evidence in the record that indicates that, at the time the pleas were entered, the defendant was operating under a different understanding of his plea agreement.[4] In light of the court's substantial compliance with the rules of practice, we conclude that the

---

[4] It should be noted that the defendant, in his brief, makes the argument that "[t]he record shows that [he] has consistently objected to accepting [the] plea arrangement and has consistently affirmed his nonacceptance of

court did not abuse its discretion in denying the defendant's motion to withdraw his pleas.

The judgments are affirmed.

In this opinion the other judges concurred.

the plea arrangement to his attorneys." He also argues that "[t]he record shows that his attorneys considered the plea agreement to be in [his] best interest"; however, he thought otherwise and "continually resisted pressure from his counsel to plead." Despite these statements, the defendant does not contest his negative response when asked by the court if anyone forced or threatened him to plead guilty. Rather, he argues that his guilty pleas were involuntary because of promises made outside of the plea agreement. There is no evidence in the record to support this assertion.