STATE OF CONNECTICUT *v.* BENNIE GENE GRAY, JR.
(AC 19862)
(AC 19889)

Landau, Zarella and Dupont, Js.

Argued December 6, 2000—officially released May 1, 2001

*Matthew T. Gilbride*, for the appellant (defendant).

*Michael L. Regan*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. In these consolidated cases, the defendant, Bennie Gene Gray, appeals from the judgments of conviction, rendered by the trial court subsequent to his pleas of guilty to the charges of possession of heroin with intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics in violation of General Statutes § 21a-279 (a)[1] and violation of probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that the court improperly denied (1) his motion to withdraw his guilty pleas because he (a) did not knowingly and voluntarily plead guilty and (b) was denied the effective assistance of counsel, and

---

[1] We note that the judgment file and the defendant's appeal form identify the statute as General Statutes § 21a-278, which we attribute to a scrivener's error.

(2) his motion to transfer the cases to a particular trial court for sentencing. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our review of the defendant's claims. On October 16, 1997, the defendant, accompanied by his counsel from the public defender's office, appeared before the court, *Miano, J.*, and pleaded guilty to the charges of possession of heroin with intent to sell, possession of narcotics and violation of probation.[2] Prior to accepting the guilty pleas, Judge Miano canvassed the defendant and concluded that the defendant's plea was knowing, voluntary and tendered with the effective assistance of counsel. The state and the defendant had entered into a plea agreement with respect to the narcotics offenses, whereby the state would recommend a total effective sentence of ten years incarceration, execution suspended after three years and three years probation.[3] Judge Miano ordered a presentence investigation. Before the hearing concluded, Judge Miano stated to the defendant, "I think you're an unusual young man, and if you get in trouble between now and December second, it's going to hurt you. It's not going to help you."

On November 20, 1997, the defendant was arrested and charged with murder. On February 11, 1998, prior

[2] The defendant, who was eighteen years old at the time of his plea, previously had been convicted as a youthful offender in violation of General Statutes §§ 54-76b through 54-76n. He originally was sentenced to six months incarceration, execution suspended.

[3] The prosecutor informed Judge Miano of the plea agreement, stating: "The state's recommendation on the possession of heroin with intent to sell, is a ten year sentence, execution suspended after serving three years and probation for three years. On the possession of narcotics, it's a concurrent two year sentence, and on the violation of probation, a concurrent six month sentence for a total effective sentence of ten years, execution suspended after three years, probation for a period of three years, this with a right to argue for a lesser sentence at the time of sentencing. And also by agreement, those other two part B criminal files and the four other part B motor vehicle files that I had named before, Your Honor, would be nolled at sentencing."

to being sentenced for the crimes at issue here, the defendant moved to withdraw his guilty pleas, and private counsel entered an appearance on behalf of the defendant in lieu of the public defender. The defendant subsequently amended his motion to withdraw his guilty pleas. Because he had an ongoing business relationship with the defendant's private counsel, Judge Miano recused himself from the cases and assigned them to another court, *Parker, J.*, for sentencing.

On July 21, 1998, following a hearing conducted over several days, Judge Parker denied the defendant's amended motion to withdraw his guilty pleas. On July 24, 1998, the day he was scheduled to be sentenced, the defendant filed a motion requesting that the cases be transferred to Judge Miano for sentencing. Judge Parker denied the motion to transfer and sentenced the defendant to a total effective sentence of ten years imprisonment, suspended after three years and three years probation in accordance with the plea agreement, in addition to the reinstatement of the six months incarceration on a previous conviction as a youthful offender. See footnote 2. The defendant appealed.

I

The defendant's first claim is that Judge Parker improperly denied his motion to withdraw his guilty pleas in violation of Practice Book § 39-27[4] because (1) the court accepted his pleas without substantial

[4] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

compliance with Practice Book § 39-19 and, therefore, the defendant did not knowingly and voluntarily plead guilty, and (2) he was denied effective assistance of counsel. We disagree.

A

The defendant claims that Judge Parker improperly denied his motion to withdraw his guilty pleas in violation of Practice Book § 39-27 because his pleas were not accepted in substantial compliance with Practice Book § 39-19.[5] Specifically, the defendant claims that his pleas were not knowing and voluntary because Judge Miano misstated the maximum possible sentence confronting him on the two narcotics charges, which is a violation of Practice Book § 39-19 (4).[6] He also claims that his public defender misled him.

---

[5] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) *The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences* and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself." (Emphasis added.)

[6] The defendant also claims that Judge Miano improperly informed him that he faced seven years probation when in fact he faced only three years probation. On the basis of our review of that portion of the transcript identified by the defendant, we conclude that there is no factual basis for that claim.

"The Court: . . . [L]et's assume I go along with the downside, the heaviest, which is a ten year sentence, execution suspended after three years and three years probation. I'm not saying that's what you're going to get, but if that is what you got, if after you got out you're on probation, do you understand you'd be on probation for three years with seven years over

1

The following portion of Judge Miano's canvass of the defendant pertains to our resolution of this claim.

"The Court: Now, on possession with intent to sell, § 21a-277 (a), your exposure here by law is not less than one year, which is suspendable, up to fifteen years in jail and up to a $50,000 fine. Do you [understand] that?

"The Defendant: Yes, Your Honor.

"The Court: Okay. And as to the possession of narcotics charge under § 21a-279 (a), the penalty is up to seven years and not less than one year, which is suspendable, up to seven years in jail and again up to a $50,000 fine. Do you understand that?

"The Defendant: Yes, Your Honor.

"The Court: All right. So your exposure here by law is not less than one year, which is suspendable, up to twelve years in jail and up to a $100,000 fine. Do you understand that?

"The Defendant: Yes, Your Honor.

"The Court: And added on top of that would be the six months for the violation of probation. Do you understand that?

"The Defendant: Yes, Your Honor.

"The Court: So your exposure here is not less than one year, which is suspendable, up to twelve years and six months in jail. Do you understand that?

___

your head? Yes or no?

"The Defendant: Yes, Your Honor.

"The Court: Do you understand what I mean by seven years over your head?

"The Defendant: Means if I violate the probation, I'll have to do seven years.

"The Court: In jail.

"The Defendant: Yes."

"The Defendant: Yes, Your Honor."

The misstatement identified by the defendant is that Judge Miano said the total possible sentence was twelve years and six months rather than twenty-two years and six months, which is the sentence the defendant potentially faced for the narcotics violations, i.e., fifteen years plus seven years.

"[O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion . . . and that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . Those statements, however, apply only to the withdrawal of pleas which are valid in the first instance. . . . Before the imposition of a sentence the trial court is required to permit the withdrawal of a plea of guilty upon proof of any of the grounds set forth in Practice Book § [39-27]. . . . One of these grounds is that [t]he plea was accepted without substantial compliance with [Practice Book § 39-19]." (Citations omitted; internal quotation marks omitted.) *State* v. *Bowden*, 53 Conn. App. 243, 247–48, 729 A.2d 795 (1999).

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from the consecutive sentences and including, when applicable the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ." Practice Book § 39-19. "Practice Book § [39-19 (4)] is an express recognition [t]hat the defendant's awareness of the maximum sentence possible is an *essential* factor in determining whether to plead guilty. . . . The length of time a defendant may

have to spend in prison is clearly crucial to a decision of whether or not to plead guilty. . . . Accordingly, Practice Book § [39-19 (4)] require[s] that the court determine that the defendant fully understands those consequences. . . . We must determine whether the trial court's failure to inform the defendant accurately of the maximum possible sentence to which his plea exposed him fell below the standard that constitutes substantial compliance with § 39-19 (4)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Bowden*, supra, 53 Conn. 248–49.

The defendant relies on *State* v. *James*, 197 Conn. 358, 361, 497 A.2d 402 (1985), and *State* v. *Bowden*, supra, 53 Conn. App. 243, in support of his argument without distinguishing the facts of either of those cases from the facts here. In *James*, the trial court completely failed to inform the defendant of the maximum possible sentence, and in *Bowden*, the trial court mistakenly informed the defendant that he faced a maximum sentence of thirty years when he actually faced twenty years imprisonment. The judgments in *James* and *Bowden* were reversed on appeal because the trial courts in those cases did not substantially comply with Practice Book § 39-19 (4). We are not presented with a similar factual scenario here.

The following additional facts concerning the hearing on the defendant's motion to withdraw his guilty pleas before Judge Parker are necessary to our resolution of the defendant's claim.[7] During the hearing, the defen-

---

[7] The prosecutor questioned the defendant on cross-examination as follows:

"Q. Mr. Gray, you knew what the maximum sentence was, you knew the sentence you could have gotten for the charges? You know the maximum, possession with intent to sell and possession of narcotics, the judge advised you of that on the record didn't he?

"A. He advised me of that, yes.

"Q. Okay. And actually, that had nothing to do with whether you would accept—you wanted to reject the plea; the actual reason was that you were promised probation and you didn't get it?

dant admitted that Judge Miano correctly informed him of the maximum term for each of the narcotics offenses with which he was charged. He also admitted that he could add, and that he knew that fifteen and seven equal twenty-two. The defendant's claim tests the bounds of credulity. In *Bowden*, the trial court overstated the maximum sentence that could be imposed against the defendant, and that overstatement may have induced the defendant to accept the state's recommendation. *State v. Bowden*, supra, 53 Conn. App. 250. Here, where the court *understated* the maximum sentence, it is unlikely that this misstatement had any effect on the defendant's decision to plead guilty. Given the fact that the defendant had knowledge of the maximum term of each of the narcotics offenses, we conclude, therefore, that the defendant's guilty pleas were made knowingly and voluntarily, and that Judge Parker did not improperly deny the defendant's motion to withdraw his guilty pleas because Judge Miano substantially complied with Practice Book § 39-19.

2

The defendant also claims that his public defender misled him by assuring him that, despite the plea

"A. Exactly.

\* \* \*

"Q. What about that misstatement? What about—what about that misstatement of Judge Miano's bothered you?
"A. The misstatement of the time?
"Q. Yeah.
"A. I'm ignorant of what I would have gotten. I never know what the maximum sentence of what is.
"Q. Well, you know how much, you know—how good are you in math?
"A. Yes.
"Q. How much is fifteen and seven?
"A. Fifteen and seven, twenty-two.
"Q. Okay. So when the judge added fifteen and seven and said twelve, you would know he was wrong, isn't that correct?
"A. Of course, I would."

agreement, the court would sentence the defendant to probation only. That claim lacks merit as well.

The defendant's public defender took the witness stand and testified as follows in response to the prosecutor's question as to exactly what he advised the defendant concerning the parameters of the plea agreement: "That he could receive on sentencing day a sentence up to three years of imprisonment followed by a period of probation, during which period of probation the unexecuted balance of the sentence would be hanging over his head as the deterrent in a possible future sentence should he violate any of the conditions of his probation, and that would be the maximum sentence that he could receive. The least sentence that he could receive would be a fully suspended sentence. Well, a fully suspended sentence is certainly what I told [the defendant] would be the least sentence that he could receive, with the suspended portion being as much as, theoretically, as much as ten years and the probation period being as much as three years." The public defender had eighteen years of experience. The only evidence the defendant produced during the hearing to counter that testimony was his own testimony.

That evidence required the court to weigh the credibility of the parties. We repeatedly have stated that credibility is a matter for the trier of fact to determine. "In a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Citation omitted; internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 407, 678 A.2d 1338 (1996). "On appeal . . . [a] factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding of fact is clearly erroneous

when there is no evidence in the record to support it
. . . or when although there is evidence to support it,
the reviewing court on the entire evidence is left with
the definite and firm conviction that a mistake has been
committed." (Internal quotation marks omitted.) *State*
v. *Coscuna*, 59 Conn. App. 434, 444–45, 757 A.2d 659
(2000). The court also was aware that the defendant
may have been motivated to withdraw his guilty pleas
on the narcotics charges because he had been charged
with murder subsequent to his pleas. Having reviewed
the record, we conclude that the court reasonably
accepted the public defender's version of his conversa-
tion with the defendant and rejected the testimony of
the defendant. We therefore conclude that Judge Parker
did not improperly deny the defendant's motion to with-
draw his guilty pleas.

### B

The defendant's second claim is that the court
improperly denied his motion to withdraw his guilty
pleas because he was denied effective assistance of
counsel. We are not persuaded.

A claim of ineffective assistance of counsel is gener-
ally made pursuant to a petition for a writ of habeas
corpus rather than in a direct appeal. *State* v. *Leecan*,
198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S.
1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Section
39-27 of the Practice Book, however, provides an excep-
tion to that general rule when ineffective assistance of
counsel results in a guilty plea. "A defendant must sat-
isfy two requirements . . . to prevail on a claim that
his guilty plea resulted from ineffective assistance of
counsel. . . . First, he must prove that the assistance
was not within the range of competence displayed by
lawyers with ordinary training and skill in criminal law
. . . . Second, there must exist such an interrelation-
ship between the ineffective assistance of counsel and

the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 197 Conn. 337, 342, 497 A.2d 390 (1985).

During the canvass on his guilty plea, Judge Miano asked the defendant: "And are you satisfied with the advice your [attorney has] given you?" The defendant answered: "Very, Your Honor, yes." At the hearing before Judge Parker on the defendant's motion to withdraw his guilty plea and on appeal, the defendant claims that his public defender rendered ineffective assistance because he failed to file a motion to suppress the narcotics that the police found when they arrested the defendant for a curfew violation. The defendant claims that because he was arrested on the date of his eighteenth birthday, a "strong possibility existed" that his arrest for violation of a curfew was improper. He further argues that the public defender should have moved to suppress the evidence that was the result of an illegal arrest. We disagree.

No evidence was presented to Judge Parker that the defendant's arrest for violation of a curfew occurred on the day when the defendant reached the age of majority.[8] Furthermore, the defendant has not cited any

---

[8] The defendant testified as follows on direct examination by his private counsel:

"Q. Did anyone advise you, anyone at all advise you that you had a basis for suppressing your—the search of yourself?

"A. No, I did not get advised of that.

"Q. And with regard to the Waterford case, did anyone discuss with you the viability of a motion to suppress?

"A. No, they did not.

"Q. Can you tell us why you were taken into custody in the Waterford case?

"A. Curfew, it was supposed to be for curfew.

"Q. And the date of that arrest, you got arrested during the day or at night?

"A. I got arrested about—it was about 11:55 at night.

"Q. On what day, do you recall?

"A. The twenty-ninth of May.

"Q. Of what year, 1997?

law in his brief to this court to support his claim that the narcotics found incident to his arrest were the fruit of an illegal arrest or search. We therefore conclude that the defendant did not meet his burden before Judge Parker of demonstrating how his public defender's performance was ineffective or that his guilty plea was not knowing and voluntary.

## II

The defendant's final claim is that the court improperly denied his motion to transfer his cases to a particular trial court for sentencing and, therefore, his pleas were not made knowingly and voluntarily. We do not agree.

As previously mentioned, Judge Miano recused himself from the cases and transferred them to Judge Parker. The defendant moved that his cases be transferred back to Judge Miano after Judge Parker denied his motion to withdraw his guilty pleas. He argues, on appeal, that he was entitled to be sentenced by Judge Miano because he had entered his pleas in the belief that Judge Miano considered him a good candidate for a fully suspended sentence. He maintains, therefore, that his pleas were not knowingly and voluntarily entered. The defendant did not raise this claim with respect to the knowing and voluntary nature of his guilty pleas when Judge Parker was considering the defendant's motion to withdraw his guilty pleas. The defendant therefore did not preserve his claim at trial.

"A. Nineteen ninety-seven.

"Q. And what's your birthday?

"A. The thirtieth of May.

"Q. And you turned eighteen at midnight on May thirtieth?

"A. Yes, I did.

"Q. What was the reason they stopped your car in Waterford?

"A. For speeding.

"Q. And they took you into custody?

"A. Yes, they did."

To obtain review of an unpreserved claim on appeal, a defendant must deserve review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), for claims of a constitutional nature or under the plain error doctrine. Practice Book § 60-5. The defendant here cannot prevail on his unpreserved claim under either doctrine. We therefore decline to review his claim.

The judgments are affirmed.

In this opinion the other judges concurred.