STATE OF CONNECTICUT *v.* JASON J. GEBHARDT
(AC 24259)

Lavery, C. J., and Flynn and DiPentima, Js.

Argued April 2—officially released July 13, 2004

*Donald A. Mitchell,* for the appellant (defendant).

*Elizabeth M. Moseley,* special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *David R. Shannon,* assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Jason J. Gebhardt, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that the court improperly excluded exculpatory evidence of third party culpability over the defendant's objection. Because this issue was not preserved for appeal, we decline to review it and affirm the judgment of the trial court.

The following facts and procedural history are pertinent to our resolution of this appeal. At approximately 1 p.m. on February 21, 2002, the victim, who was six months old, and his mother arrived at the home of the defendant, who was the mother's boyfriend. The victim, who is not the defendant's biological child, resided with his mother and his maternal grandmother. Both the defendant and the victim's grandmother were often entrusted with the victim's care while the mother was at work.

Before the defendant left his home with the victim and the victim's mother, he pulled the victim out of his car seat and changed his diaper in the mother's car. The victim was crying during this time. The defendant

threw the victim back into the car seat and shook the car seat in an effort to quiet him. The defendant, the victim and the victim's mother then left in the car. They stopped when they heard the victim gurgling in the back of the car and saw that he was having trouble breathing. A neighbor heard the two adults screaming the victim's name and called for emergency assistance. After the victim was taken to Danbury Hospital, he was transported via helicopter to Yale-New Haven Hospital. There, the victim was diagnosed as suffering from two subdural hematomas caused by severe shaking, also known as "shaken baby syndrome." One of the hematomas was determined to have occurred two to four weeks prior to February 21, 2002, and the other was determined to have occurred at some point between February 20, and February 21, 2002.

Police began investigating these occurrences by interviewing the victim's mother and the defendant at Yale-New Haven Hospital. Initially, the defendant told the police that he did not know what had caused the victim's injuries. Later that evening, however, the defendant gave a written statement to the police in which he admitted to having shaken the victim two to three weeks prior and to grabbing the victim roughly and throwing him into his car seat earlier that day. The defendant was arrested the next day.

The defendant claims on appeal that the court improperly excluded a witness' testimony that should have been admitted as third party culpability evidence, thereby depriving him of his constitutional right to present his defense. Prior to reaching the merits of the defendant's claim, we first examine the threshold issue of whether his claim was preserved for our review.

The following additional facts are relevant to our analysis. On the evening of the incident, in furtherance of the investigation, Matthew Reilly, a Connecticut state

police trooper, arrived at the home where the victim lived with his mother and grandmother. His report indicated that the victim's grandmother made the following unprompted exclamation: "No one hurt the baby! [The victim is] not a shaken baby!" The victim's grandmother denied making this statement on cross-examination. The defendant sought to impeach the victim's grandmother by calling Reilly to testify that she had in fact made this statement to him. The court precluded Reilly from testifying on the basis of its opinion that rule 6.4 of the Connecticut Code of Evidence prohibits extrinsic evidence from being used to impeach a witness' credibility.[1]

Earlier in the trial, the defendant had sought to introduce photographs of the grandmother's home into evidence as third party culpability evidence. The state filed a motion in limine specifically to prevent those photographs from being admitted, which was granted by the court due to the defendant's failure to demonstrate a direct connection to any third party culpability. The court granted the motion without prejudice and informed the defendant that he could attempt to introduce the photographs again if he could establish such a direct connection. The state filed a second motion in limine eight days later to prohibit the defendant from presenting evidence as to third party culpability prior to making an offer of proof outside the presence of the jury. The motion did not specify any particular evidence to which it was intended to apply. At trial, the court addressed the state's second motion in limine prior to the defendant's calling of Reilly as a witness and excused the jury.[2]

---

[1] The defendant does not challenge on appeal the court's ruling that the evidence was not admissible for impeachment purposes pursuant to rule 6.4. Therefore, we do not address whether the court abused its discretion in this regard.

[2] Before proceedings began on the day of trial that the state's second motion in limine was addressed, the state brought the substance of its motion to the court's attention. The following exchange is pertinent:

The court asked defense counsel what Reilly would be testifying about, and counsel replied: "He's going to be [asked about] his interviewing of [the victim's grandmother], actually going to [her] house on the day of the incident. At which point he has written [in] his reports that [the grandmother] stated to him that . . . 'No one hurt the baby. He is not a shaken baby.' That question was posed to [the grandmother] during cross-examination. She stated she did not recall stating that. So, it's offered first for impeachment purposes relative to [the grandmother]. And secondarily, it's offered as an—it's not even an exception to the hearsay rule. It's offered in that it is not presented to the court for the truth of the matter asserted. It is simply offered that it was said."

The court precluded the testimony from being offered, stating: "You cannot impeach the credibility of a witness by offering extrinsic evidence." The court subsequently inquired of defense counsel whether there was any other purpose for which he was offering Reilly's testimony. Defense counsel replied in relevant part: "Well, outside of that . . . the defense would seek once again to have the pictures of the [grandmother's house] once again reviewed and entered for the purpose of entering them into evidence." Thereafter, the court and defense counsel engaged in a discussion regarding third party culpability only as it pertained to the photographs.

"[The Prosecutor]: It's my understanding [that defense counsel] may call Trooper Reilly as a witness. I'm going to be asking for an offer of proof outside the presence of the jury before he testifies.

"The Court: Okay. There was a motion in limine filed requesting the court to preclude any third party culpability evidence. I take it that's what that's about.

"[The Prosecutor]: It's part of that. . . . I don't know if any of the defense witnesses are going to blurt out names of people who they thought did it. I want it understood that they're not allowed to do that unless there's some direct connection, some evidence of that.

"The Court: All right. Well, if there's an objection or a motion to strike, I'll hear it at the time. I don't know what anybody's going to say in particular."

The court stated: "My ruling insofar as the pictures is the same as before. I don't see how any such pictures are relevant at this point. I don't see that a direct link or direct evidence that third party culpability has been introduced. Also, insofar as the trooper's testimony about what [the grandmother] may have said is concerned, if you want to impeach the testimony of a witness by extrinsic evidence, under the rules, that's improper. So, I'm going to sustain the state's motion in limine."

The defendant rested his case and filed a motion for acquittal and a motion for a new trial, both of which were denied by the court without an accompanying memorandum of decision. The defendant's motion for a new trial, but not his motion for acquittal, challenged the court's decision not to admit the testimony on the ground that it constituted third party culpability evidence.

The defendant contends that because the state's second motion in limine raising the issue of third party culpability was granted by the court, and because the motion was argued in connection with Reilly's proposed testimony, the issue was preserved. At oral argument before this court, the defendant's counsel responded to our inquiry as to whether the claim was preserved by stating: "[D]uring the trial, the issue arose before the offer was made when the state filed a written motion in limine to preclude, specifically, third party culpability evidence." We respectfully disagree with the defendant's assertion that the state's second motion in limine sought to preclude third party culpability evidence. The state's second motion in limine asked only that the defendant be prohibited from introducing third party culpability evidence prior to a sufficient offer of proof outside the presence of the jury. The court's granting of the state's second motion was not sufficient to preserve this distinct claim because in granting the motion,

the court merely ruled that third party culpability evidence could not be introduced until the defendant made an offer of proof. The state's second motion also stands in contrast to the state's first motion in limine, regarding the admission of the photographs, in which the state requested that the court "exclude" them from evidence. The second motion in limine made no such request. We conclude that the motion did not specifically seek to *preclude* third party culpability evidence, as the defendant has argued. That does not end our inquiry, however.

We look also to the offer of proof regarding the admission of Reilly's testimony that was made by the defendant at trial, outside of the jury's presence. The record reflects that the defendant never proffered Reilly's testimony as evidence of the grandmother's third party culpability. Rather, he made an offer of proof under a third party culpability theory only with respect to the photographs. It follows, therefore, that the court never determined whether Reilly's testimony was admissible under a third party culpability theory.

"An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review. . . . The appellant bears the burden of providing an adequate appellate record through the offer of proof, among other vehicles." (Citation omitted; internal quotation marks omitted.) *State v. Zoravali*, 34 Conn. App. 428, 433, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). "[W]e have consistently declined to review claims based on a ground different from that raised in the trial court . . . or where the claim has not been raised before the trial court in the first instance." (Citation omitted; internal

quotation marks omitted.) *State* v. *Beliveau*, 36 Conn. App. 228, 242, 650 A.2d 591 (1994), aff'd, 237 Conn. 576, 678 A.2d 924 (1996). "The policies behind the requirement that claims be made at trial in order to be reviewed on appeal . . . are principally to permit the trial court to correct any errors before it is too late, and thus to conserve judicial resources and to avoid the spectacle of the trial court proceedings becoming a Kafkaesque academic test which [the trial judge] may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." (Citation omitted; internal quotation marks omitted.) *State* v. *Hansen*, 8 Conn. App. 26, 28–29, 510 A.2d 465, cert. denied, 201 Conn. 806, 515 A.2d 379 (1986).

In his brief, the defendant states that the court "concluded that the proposed testimony could only be introduced if it directly connected a third party to the crime and that it was not otherwise relevant." Having thoroughly reviewed the record, we conclude that this characterization of the court's conclusion is inaccurate.

The court's discussion of third party culpability was confined solely to whether the photographs of the grandmother's home should have been admitted, an issue the defendant does not contest on appeal. The court determined that the photographs were not relevant because no direct evidence of third party culpability had been introduced, and it declined to admit them into evidence. Only after the court had made its ruling regarding the photographs did it then determine whether to admit Reilly's testimony. Its analysis regarding the admission of Reilly's testimony centered on whether it properly could have been admitted to impeach the grandmother under the Connecticut Code of Evidence and whether it could have been admitted as nonhearsay. When the trial court inquired of defense counsel whether he sought to have the testimony admit-

ted on any other grounds, counsel shifted the discussion to the photographs.

The court revisited its ruling on the admission of Reilly's testimony shortly thereafter, once again asking defense counsel for what purpose the testimony was offered, to which he replied: "It was offered first that she didn't remember—she didn't recollect doing it, which is impeachment, which [the court] has already ruled on. But it is not offered for the truth of the matter asserted as to whether or not [the victim] was a shaken baby. It's offered for just the fact that it was said." The court concluded, "I'm going to stick with my original ruling, particularly in light of the fact that [defense counsel agrees] that when [the grandmother] was on the stand she didn't remember saying it . . . ."

The defendant does not challenge on appeal the court's rulings that Reilly's testimony was inadmissible for impeachment purposes or that it constituted hearsay, although those rulings were made in response to the grounds on which he proffered the evidence.[3] Rather, he argues that the evidence was relevant and material as third party culpability evidence. The evidence was not sought to be admitted on that ground. To review this claim, raised for the first time on appeal, "would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) State v. Charles, 56 Conn. App. 722, 729, 745 A.2d 842, cert. denied, 252 Conn. 954, 749 A.2d 1203 (2000).

We also reject the defendant's assertion that in raising the claim in his motion for a new trial, this claim was properly preserved. "It is clear that a motion for a new

---

[3] Defense counsel specifically argued: "So, it's offered first for impeachment purposes relative to [the grandmother]. And secondarily, it's offered as an—it's not even an exception to the hearsay rule. It's offered in that it is not presented to the court for the truth of the matter asserted. It is simply offered that it was said."

trial must be premised upon the trial court having committed error prior to the motion for a new trial. The error claimed to support a motion for a new trial must have occurred during the trial." *State* v. *Curley*, 25 Conn. App. 318, 330, 595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991). A court cannot be said to have refused improperly to admit evidence during a trial if the specific grounds for admission on which the proponent relies never were presented to the court when the evidence was offered. When a posttrial motion raises new grounds for admission of evidence that were never raised before the trial court, the claim is not considered properly preserved. See *Travelers Ins. Co.* v. *Namerow*, 257 Conn. 812, 832 n.15, 778 A.2d 168 (2001) (defendants' attempt to raise evidentiary objection in motion to set aside verdict on different ground than raised before trial court "came too late" and did not preserve issues for appeal), superseded in part on other grounds, *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 807 A.2d 467 (2002). We thus decline to afford review of that unpreserved claim.

Because we conclude that the defendant's claim regarding the admission of Reilly's testimony was not preserved, he cannot prevail on his constitutional claim that he was deprived of his right to present a defense. He did not make an offer of proof regarding the admissibility of the testimony as third party culpability evidence; therefore, his claim that he was deprived of his right to present a defense because the court improperly refused to admit the evidence on that ground also cannot be reviewed. Moreover, we note that the defendant did not object to the court's ruling on the ground that it constituted the deprivation of his constitutional right to present a defense. See *State* v. *Morgan*, 70 Conn. App. 255, 262, 797 A.2d 616 (noting that although defendant had preserved evidentiary claim, he did not preserve claim that he was deprived of constitutional right to present defense), cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). He has not sought review of this issue

under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), nor has he sought plain error review under Practice Book § 60-5. Therefore, we decline to review his constitutional claim.

The judgment is affirmed.

In this opinion the other judges concurred.