STATE OF CONNECTICUT *v.* LINDA HOWARD
(AC 27786)

Gruendel, Lavine and Stoughton, Js.

Argued October 23, 2007—officially released February 12, 2008

*Leo E. Ahern*, for the appellant (defendant).

*Christopher T. Godialis*, senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Annemarie L. Braun*, assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Linda Howard, was convicted, after a trial to the jury, of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2), larceny in the first degree by embezzlement in violation of General Statutes §§ 53a-119 (1) and 53a-122, and larceny in the second degree in violation of General

Statutes § 53a-123 (a) (5).[1] She has appealed from the judgment of conviction rendered after the guilty verdict. Her only claim on appeal is that the court improperly excluded from evidence a document that she characterizes as a statement of David D. Seymour, the victim of the larcenies. We affirm the judgment of the trial court.

From the evidence offered at the trial, the jury reasonably might have found facts as recited herein. The defendant lived in Seymour's house between January 1, 2000, and July 9, 2003, as his resident health care aide. Seymour was then in his eighties, having been born on December 14, 1917. The defendant cooked and cleaned for Seymour and assisted him with his personal hygiene. Seymour had worked as a tool and die maker for many years and had saved a few hundred thousand dollars for retirement. The defendant, having developed a personal relationship with Seymour, used his signature stamp to make more than $300,000 worth of checks drawn on his bank accounts payable to herself and others. She used the proceeds for her benefit and to benefit some of her relatives. On July 9, 2003, Seymour was transported to Griffin Hospital in Derby where he learned, to his evident surprise and distress, that he was without funds. He was obliged to obtain financial assistance from the state and never returned to his home. He died in a nursing home on April 7, 2004. The defendant claimed that all of the checks were made with Seymour's knowledge and consent.

Although she did not testify, as a part of her defense, the defendant attempted to introduce a writing that she characterized as a statement of Seymour. Her unsuccessful attempt is the subject of this appeal. Outside of the presence of the jury, in an offer of proof, the defendant called as a witness Tawanna Page, her daughter.

---

[1] The court, *B. Fischer, J.*, subsequently merged counts one and two at sentencing.

Page testified that while she was at work on January 1, 2003, the defendant telephoned and asked her to type a letter for her. The defendant dictated and Page wrote down in longhand the defendant's dictation. Page then typed the dictation and made copies and took them to the defendant, who was with Seymour in his room. The writing is as follows:

"January 1, 2003

"To Whom it May Concern:

"I, David D. Seymour, being of sound mind am writing to inform the necessary parties of the liquidation of my assets. These funds were slowly distributed to [the defendant], my caretaker. She has proven to be faithful, committed, caring, loving, patient, and honest to my late wife and me. I appreciate her for keeping me in my home until I am no longer able to stay here. I have no regrets for all that I have given her. I willingly write and sign this letter in case of any disputes, between or from family members, regarding the whereabouts of my assets. [The defendant] has done all she could to fulfill my request to stay at home and I am especially grateful.

"Sincerely,

"X /s/ David D. Seymour

"David D. Seymour."

Above the name and next to the X is what is purported to be the signature of Seymour. Page testified that she gave the copies of the document to the defendant, who read it out loud and gave the copies to Seymour. Page testified that Seymour began to look at them and put them on a table and began to sign them. She testified on cross-examination that she did not put the X on the writing and did not know who had put it there.

The defendant contends in her brief that the statement was offered to show Seymour's state of mind at the time when the prosecution alleged that she was embezzling money from him. The state objected to the admission of the writing on the ground of hearsay and further that it lacked authentication. The following discussion ensued:

"The Court: What is your objection?

"[The Prosecutor]: My objection is lack of authenticity, and I also object on the grounds of hearsay. . . . The hearsay is that this is a statement by the victim. He's unavailable and . . . unless it fits into a colorable hearsay exception . . . but there is not a hearsay exception that covers this. This is certainly not state of mind. . . . The letter is past looking . . . the state of mind exception requires [the statement to be] present or forward looking."

The defendant did not take issue with the prosecution's assertion that the information in the letter constituted hearsay but claimed that the writing was nevertheless admissible pursuant to an exception to the rule against hearsay because it showed Seymour's then present state of mind.

The court sustained the hearsay objection on the grounds that the statement was past looking and not reliable. Specifically, the court stated: "Well, the problem is . . . you're trying to get this statement in through the person who was called on the phone to type a letter. . . . [Page] gets a call from her mother, the defendant, to type a letter for her. It is a past looking statement. I'm not aware of any hearsay exception that it falls under. . . . It's not in [Page's] regular course of business to type up letters on behalf of her mom and . . . Seymour. She also—I think she testified in the offer of proof, I believe, 'my mom and . . . Seymour needed something in writing.' She doesn't remember

the X being put on the letter. For all those reasons, it's not reliable. It's hearsay, and I will not allow [it]."

The defendant, on appeal, does not challenge the state's characterization of the statement as hearsay but, instead, argues that the court improperly excluded the letter because, she asserts, the letter was admissible pursuant to the state of mind exception to the rule prohibiting the admission of hearsay evidence, and the letter was properly authenticated by Page's testimony.

The state of mind exception to the hearsay rule is set forth in § 8-3 (4) of the Connecticut Code of Evidence and permits a statement of a declarant's then existing mental or emotional condition. Specifically, § 8-3 (4) provides that "[a] statement of the declarant's then-existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed" is not excluded on the basis of hearsay.

The court excluded the contents of the letter as not satisfying the state of mind exception on two independent grounds—that it consisted of past looking statements and that the statements were unreliable. The defendant challenges the first ground relied on by the court in its determination to exclude the letter, namely, that the letter consisted of wholly past looking statements. She then provides an abbreviated analysis asserting that the letter was properly authenticated, stating in her appellate brief: "[Page] testified that she saw . . . Seymour read and sign the statement. This witness with knowledge of the direct facts is sufficient authentication of the document to support its admission. . . . Cross-examination is the mechanism to test what weight it ought to be given." (Citations omitted.)

Thus, the defendant asserts that the court's determination was based, in part, on the defendant's failure to authenticate the letter properly.

Despite the assertion of the defendant, the record reveals that the court did not exclude the evidence on the ground that she failed to authenticate the writing adequately, as is required pursuant to § 9-1 of the Connecticut Code of Evidence but, rather, on the ground of its determination that the contents of the writing were not sufficiently reliable to satisfy the hearsay exception. Because the defendant has failed to challenge one of the grounds relied on by the court to exclude the evidence, we decline to review the challenge to the court's determination. See *State* v. *Saucier*, 283 Conn. 207, 223, 926 A.2d 633 (2007) (claim not raised on appeal deemed abandoned); *Doe* v. *Christoforo*, 87 Conn. App. 359, 365, 865 A.2d 444 (when court excludes evidence on multiple grounds, appellant does not prevail by refuting only one ground), cert. granted on other grounds, 273 Conn. 920, 871 A.2d 1027 (2005) (appeal withdrawn October 13, 2005).

The defendant has also claimed that the writing is admissible pursuant to the residual exception to the hearsay rule found in § 8-9 of the Connecticut Code of Evidence. This claim was not raised in the trial court. We have consistently declined to review claims not raised in the trial court; *State* v. *Gebhardt*, 83 Conn. App. 772, 778, 851 A.2d 391 (2004); and, accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.