******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WANTO POLYNICE
(AC 36626)

DiPentima, C. J., and Keller and Prescott, Js.

*Argued February 1—officially released April 5, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hudock, J.)

*Jodi Zils Gagne*, with whom, on the brief, was
*Charles F. Willson*, assigned counsel, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney,
with whom, on the brief, were *Richard J. Colangelo, Jr.*,
state's attorney, and *Paul J. Ferencek*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Wanto Polynice, appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (2).[1] The defendant claims that this court should reverse his conviction and remand the case for a new trial because (1) he did not receive effective assistance from his trial counsel, (2) the trial court improperly excluded evidence that was relevant to demonstrating that the victim was able to consent to the sexual intercourse underlying his conviction, and (3) the court improperly admitted photographs of the victim's bedroom. We affirm the judgment of the trial court.

The facts that the jury reasonably could have found may be summarized as follows. The female victim[2] in the present case, who was twenty-one years of age at the time of the events at issue, suffers from a mental disability that resulted in her inability to consent to sexual intercourse.[3] On March 14, 2011, the victim moved into a group residential facility administered by a nonprofit agency that contracts with the Department of Developmental Services to provide services, such as job training, to persons with intellectual and developmental disabilities. Prior to the events at issue, the defendant, an agency employee who was the victim's job skills coach, was informed of the victim's disability and agency policy that prohibited sexual contact between employees and clients. The defendant's job related responsibilities included providing transportation for the victim from her residence to her job site.

On March 22, 2011, the defendant arrived at the victim's residence to transport her and several other female residents to their job sites. At a point in time at which the defendant was alone with five residents, including the victim, the defendant put his hand on the victim's back and led her to her empty bedroom. The defendant closed the bedroom door and placed a beanbag chair against it. The defendant instructed the victim to pull down her pants, and then assisted her in doing so. The defendant removed his pants, pushed the victim onto a bed, and positioned himself on top of her. The defendant engaged in penile-vaginal intercourse with the victim. The victim did not call for help during the encounter, but she was frightened and believed that she was unable to get the defendant off of her. Afterward, the defendant dressed himself and went into a bathroom where he washed his hands. The defendant instructed the victim to pull up her pants and to keep their encounter a secret. After the victim used the bathroom, the defendant transported the victim to her job site at a church.

Later that day, while at her job site, the victim used her cell phone to call 911. She reported that she had

been raped and that the police needed to come to the church to arrest the defendant. The victim was transported to a hospital where, among other things, a rape kit was administered. The victim was examined by Elizabeth Horan, a sexual assault nurse examiner. During Horan's interview of the victim, the victim essentially related to Horan that an employee of her residence had kissed her on the lips, had inserted his penis into her vagina, and had inserted a finger into her anus. During her physical examination of the victim, Horan observed trauma and bleeding of the victim's hymen, the appearance of redness in the victim's cervix, a tear and bleeding in the victim's anal opening, and the presence of recent scratches on the victim's back. A forensic analysis was undertaken of swabs taken from the victim's vaginal cavity, genital area, and anal area, all of which revealed the presence of sperm. The results of forensic testing of this material strongly supported a finding that the defendant had sexual contact with the victim. Additional facts will be set forth as necessary.

I

First, the defendant claims that he is entitled to a new trial because he did not receive effective assistance from his trial counsel. We disagree.

Defense counsel attempted to demonstrate that the sexual contact at issue did not involve force and that, despite the victim's disability, she was able to consent to it. Also, defense counsel suggested that others, including the victim's mother, had influenced her recollection of the incident. The defendant argues that his trial counsel was deficient in two ways. The defendant argues that repeatedly during the trial, defense counsel used the term "victim" when referring to the complaining witness despite the fact that the defendant disputed that any crime had been committed. He argues that, by doing so, counsel effectively conceded the issue of his guilt, thereby "handing the state a guilty verdict." Also, the defendant argues that defense counsel failed to object to an isolated portion of the court's charge[4] that, he argues, improperly invited the jury to undertake a search for "truth" rather than requiring the jury to hold the state to its burden of proof beyond a reasonable doubt. The defendant claims that an objection at trial would have afforded the court an opportunity to "amend the instruction" and would have afforded him an opportunity "to challenge it on appeal."[5] It is undisputed that the defendant did not raise these claims, related to the effectiveness of the representation he was provided, before the trial court.

The defendant argues that he properly may raise the claim of ineffective representation in the present direct appeal because the claim presents an issue of law that may be resolved on the basis of the facts appearing in the record. The record, he argues, "clearly demonstrates the defects in counsel's performance and the

impact of those defects." He argues that no further proceedings are necessary to resolve the issue and that a concern for efficiency should compel this court to resolve the issue on its merits. The state disagrees, arguing on the basis of relevant precedent that the defendant's claim does not fall within the narrow category of ineffective assistance of counsel claims that a defendant may raise in a direct appeal. We agree with the state.

Our Supreme Court has explained: "[A] claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal . . . [because] [t]he trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action. . . . It is preferable that all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceeding. . . . Furthermore, [o]n the rare occasions that [this court has] addressed an ineffective assistance of counsel claim on direct appeal, [it has] limited [its] review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel. . . . [This court has] addressed such claims, moreover, only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 768, 51 A.3d 988 (2012); see also *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Additionally, this court has observed that a defendant may pursue a claim of ineffective assistance in a direct appeal in connection with a claim that his guilty plea was the result of ineffective assistance of counsel. "A claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective assistance of counsel results in a guilty plea." (Citation omitted.) *State* v. *Gray*, 63 Conn. App. 151, 161, 772 A.2d 747, cert. denied, 256 Conn. 934, 776 A.2d 1151 (2001); *State* v. *Lameirao*, 135 Conn. App. 302, 326, 42 A.3d 414, cert. denied, 305 Conn. 915, 46 A.3d 171 (2012). The defendant's ineffective assistance of counsel claim does not fall into these well established exceptions. The defendant has failed to persuade us that he properly may raise this claim for the first time in the present direct appeal. Accordingly, we decline to reach the merits of the claim.

II

Second, the defendant claims that the court improperly excluded evidence that was relevant to demonstrating that the victim was able to consent to the sexual intercourse underlying his conviction. We do not reach the merits of this claim.

The following additional facts are relevant to this claim. Prior to the start of trial, the state filed a motion in limine in which, among other things, it asked the court to preclude evidence that, while a patient at Silver Hill Hospital in New Canaan during the year prior to the events at issue, the victim "had made two . . . complaints to her mother that males at the hospital had inappropriately touched her when they assisted her during seizure episodes . . . ." The state argued that such evidence was barred by the rape shield law and was otherwise irrelevant.

The defendant filed a motion in limine in which he asked the court to admit "evidence of [the] victim's prior false allegations regarding inappropriate touching or contact with her by the employees of Silver Hill [Hospital]." The defendant represented that, on two occasions prior to the events at issue, the victim made allegations to her mother that she had been "inappropriately touched" by staff members at Silver Hill Hospital. The defendant proffered that the victim's mother determined that these allegations, which were not reported to hospital authorities, were false and did not pursue them. The defendant argued that evidence of prior false allegations of sexual abuse by the victim was relevant to the jury's assessment of her credibility in the present case.

Prior to trial, the court held a hearing outside of the jury's presence with respect to evidentiary matters, including the admissibility of evidence concerning the two allegedly false allegations made by the victim at Silver Hill Hospital. During the hearing, the court heard testimony from the victim's mother. In relevant part, the victim's mother testified that, within the year prior to the events at issue in the present case, the victim was a patient at Silver Hill Hospital, where she received treatment for mental illness. On one occasion, the victim spoke to her mother by telephone and stated, "I had a seizure and this man came up to me and touched me, put me on the couch and I'm really upset . . . ." The victim identified the man as one of the nurses at the hospital. The victim did not state that the nurse had touched her in a sexual manner. The victim was "worried about guys helping her because she doesn't have control" after she has suffered a seizure, and that generally she "[does not] like to be touched." The victim's mother testified that she did not file a complaint with the hospital with regard to this allegation because she did not believe that her daughter had considered the incident from the correct perspective.

With respect to the second allegedly false allegation made by the victim, the victim's mother testified in relevant part that the victim spoke to her by telephone and told her that, after she had suffered a seizure, a male patient, who was a friend of hers, made physical contact with her as he helped her get into a chair. The complaint did not involve touching of a sexual nature. The victim's mother testified that she did not pursue her daughter's complaint because she believed her daughter had viewed the contact as inappropriate when, in fact, the contact was incident to a friend offering assistance following a seizure.

The state argued that, although the defendant sought to introduce evidence concerning the two instances of physical contact as prior false allegations of sexual abuse, the testimony of the victim's mother demonstrated that the allegations merely involved physical contact of a nonsexual nature and that the physical contact that the victim alleged had, in fact, occurred. Thus, the state argued, the defendant failed to demonstrate that the evidence was admissible. Defense counsel argued that the evidence was "automatically relevant" if it involved "false allegations," but appeared to acknowledge that the allegations were not of a sexual nature and, thus, any arguments under the rape shield statute did not apply. Also, defense counsel argued that the evidence was "relevant as to [the victim's] ability to consent on a prior past occasion," but did not elaborate with respect to this argument.

In ruling on the admissibility of the evidence at issue, the court observed in relevant part: "As far as what the testimony establishes in the court's mind is that in fact it is very clear that on two occasions [the victim] was touched by two males. One a male nurse and one was a male friend. So, [the victim] was not in error that she had been touched. . . . There is nothing that the court can really hang its hat on to say that there's any reliability that this was a sexual event of any kind, any kind." The court went on to observe: "[The evidence] is untrustworthy insofar as the credibility of the victim complainant is concerned. It is more probative as to [the victim's mother's] decision-making, [the victim's mother's] ability to objectively evaluate and process information that she is receiving, not the victim complainant." The court, having determined that the evidence was not relevant to an assessment of the victim's credibility, granted the state's motion in limine insofar as it sought to exclude evidence related to the two occasions in which the victim had told her mother that she had been touched by males while she was a patient at Silver Hill Hospital. The court did not address any other grounds for which the evidence might have been admitted.

In the present claim, the defendant does not challenge the court's determination that the proffered evidence

was not admissible for impeachment purposes as evidence of prior false allegations of sexual contact. Instead, the defendant argues that the court should have admitted the evidence because it was relevant to the issue of the victim's ability to consent to the sexual intercourse at issue in this case. The defendant argues: "Evidence of the two instances of which she complained of seemingly benign physical contact would have undermined the perception that she was unable to reject physical contact and thus not render consent effectively." In so doing, the defendant advances a ground of admissibility that differs from that which he advanced before the trial court.[6] Moreover, the claim addresses a theory of admissibility that does not appear to have been considered by the trial court. As set forth previously, the court concluded that because the evidence did not demonstrate that the victim had made a false statement, let alone one concerning events of a sexual nature, the evidence was not relevant with regard to the issue of the victim's credibility.

An appellant who challenges on appeal a trial court's exclusion of evidence is limited to the theory of admissibility that was raised before and ruled upon by the trial court. "A court cannot be said to have refused improperly to admit evidence during a trial if the specific grounds for admission on which the proponent relies never were presented to the court when the evidence was offered." *State* v. *Gebhardt*, 83 Conn. App. 772, 781, 851 A.2d 391 (2004); see also *State* v. *Gallo*, 135 Conn. App. 438, 456, 41 A.3d 1183 (2012) (reviewing court declines to review claim that is based on theory of admissibility that was not raised before and ruled upon by trial court), appeal dismissed, 310 Conn. 602, 78 A.3d 854 (2013) (certification improvidently granted); *State* v. *Velez*, 17 Conn. App. 186, 192, 551 A.2d 421 (1988) (reviewing court declines to review claim that is based on theory of admissibility that was not raised before and ruled upon by trial court), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989). "Error does not lie in the exclusion of evidence claimed on an inadmissible ground even though it might have been admissible had it been claimed on another and different ground [at trial]. . . . A contrary policy would allow trial court proceedings to become a Kafkaesque academic test which [the trial judge] may be determined to have failed because of questions never asked of him or issues never clearly presented to him." (Citations omitted; internal quotation marks omitted.) *DiSorbo* v. *Grand Associates One Limited Partnership*, 8 Conn. App. 203, 209, 512 A.2d 940 (1986).

With respect to the proffered evidence at issue, the defendant framed the issue of admissibility in terms of the victim's prior false allegations of inappropriate touching and whether such evidence was relevant to the issue of the victim's credibility. On the record before

us, it is reasonable to conclude that the court made its evidentiary ruling on the basis of the theory of admissibility that was distinctly raised at the time of trial. We will not upset the court's exercise of discretion in ruling on the admissibility of evidence on the basis of a ground it did not address, for "[w]e cannot pass on the correctness of a trial court ruling that was never made." *Fischel* v. *TKPK, Ltd.*, 34 Conn. App. 22, 26, 640 A.2d 125 (1994). Accordingly, we decline to reach the merits of the defendant's claim of evidentiary error.[7]

III

Finally, the defendant claims that the court improperly admitted photographs of the victim's bedroom. We disagree.

The following additional facts are relevant to the present claim. During the trial, the defendant filed a motion in limine in which he asked the court to preclude the state from introducing into evidence photographs that depicted the victim's bedroom, including, inter alia, toys, markers, and coloring books that allegedly belonged to the victim. The defendant argued in relevant part that the photographs were not relevant or that they had very little relevance to any issue properly before the jury. Also, he argued that they tended to evoke sympathy toward the victim and hostility toward the defendant. The defendant argued that the court should exercise its discretion to preclude the admission of the photographs because their probative value was outweighed by their tendency to unduly prejudice the defendant.

The court heard argument on the defendant's motion in limine outside of the presence of the jury. At issue were three photographs, taken on March 22, 2011, that were marked as exhibits for identification at that time. The photograph marked as exhibit fifteen depicted an overall view of the crime scene, the victim's bedroom. It showed two beds, a table, and other furniture. The photograph marked as exhibit sixteen depicted several items lying on top of one of the beds. These items included several stuffed toys, coloring books, a board game, a laptop computer, and two bags. The photograph marked as exhibit seventeen depicted several items lying on top of a table in the bedroom. These items included a box of crayons as well as personal care items (two hairbrushes, deodorant, facial tissue, and mouthwash).

At the hearing, defense counsel argued that because the photographs depicted items such as coloring books, toys, and crayons, the photographs tended to evoke feelings of sympathy for the victim and anger for the defendant. Defense counsel argued that, inasmuch as the evidence was probative with respect to the issue of the victim's "development level," the state already had presented expert testimony with respect to that

issue and that the jury had had an opportunity to evaluate the victim during her trial testimony. The prosecutor argued that exhibit fifteen was not prejudicial and that it had probative value in that it depicted the bed in which the crime allegedly had occurred, as well as the beanbag chair that the victim had mentioned during her testimony. The prosecutor argued that exhibits sixteen and seventeen depicted some "items that a young child would possess," and thus were relevant to the jury's assessment of a hotly contested issue in the case, specifically, the victim's cognitive level at the time of the crime. The prosecutor argued: "I think that these photographs really bring home or show what this young lady is all about. What her cognitive level was, what her functioning level was. And I think it's relevant to show . . . whether she can consent to sexual intercourse."

The court ruled that exhibit fifteen, depicting the overall crime scene, was admissible. The court stated that exhibits sixteen and seventeen were relevant because the state bore the burden of proof with respect to the victim's cognitive abilities at the time of the crime and that the photographs were relevant to that inquiry. The court, observing that the photographs did not depict anything "extreme," rejected the defendant's argument that the photographs were unduly prejudicial. Subsequently, the state introduced the photographs in evidence.

On appeal, the defendant iterates in substance the arguments that he raised before the trial court. Limiting his claim to exhibits sixteen and seventeen, the defendant claims that the probative value of these two exhibits was, at best, minimal, and that any probative value was outweighed by the danger of undue prejudice toward him. He argues: "[T]he photos only served to stoke the emotional flames and further render the verdict unreliable."

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . [S]ound discretion has long meant a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. . . . Additionally, [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Osbourne*, 162 Conn. App. 364, 369–70,      A.3d      (2016).

"[R]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. . . . All evidence adverse to a party is, to some degree prejudicial. To be excluded, the evidence must create prejudice that is undue and so great as to threaten injustice if the evidence were to be admitted." (Citations omitted; internal quotation marks omitted.) *State* v. *Bullock*, 155 Conn. App. 1, 40, 107 A.3d 503, cert. denied, 316 Conn. 906, 111 A.3d 882 (2015); see also Conn. Code Evid. §§ 4-1 and 4-3.

The record reveals that the court carefully considered the defendant's objection and properly applied the law. The photographs at issue were taken shortly after the crime. The jury reasonably could have found that they showed items belonging to the victim and, thus, shed light, even to a slight degree, on her development and her interests. These inquiries were germane to an understanding of her cognitive abilities, which was a critical issue in the present case because in connection with the crime of sexual assault in the second degree, as charged, the state bore the burden of proving that she was "impaired because of mental disability or disease to the extent that [she was] unable to consent to . . . sexual intercourse . . . ." General Statutes § 53a-71 (a) (2). Moreover, the court reasonably determined that the probative value of the photographs was not outweighed by their tendency to unduly prejudice the defendant. Although the defendant argues that the two photographs were prejudicial in that they depicted items that reasonably could be associated with a child, this evidence was no more prejudicial to the defendant than other evidence elicited at trial concerning the extent of the victim's mental disabilities. Accordingly, we conclude that the court's evidentiary ruling reflected a sound exercise of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury found the defendant not guilty of sexual assault in the first degree. Following the defendant's conviction of sexual assault in the second degree, the court sentenced the defendant to serve a term of incarceration of ten years, execution suspended after eight years, followed by thirty-five years of probation with special conditions.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we do not identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] The jury heard extensive testimony from Sejal Vyas, a clinical neuropsy-

chologist who evaluated the victim. She testified in relevant part that the victim had a history of complex partial seizure disorder, which she described as a type of epilepsy, and intermittent explosive disorder. She testified that the victim's IQ was on the lower end of mild retardation. She testified that the victim's receptive language skills were "between a five to nine year old level," her reading skills were at a second grade level, her nonverbal reasoning skills ranked in the first percentile for someone of her age, and her short-term memory was impaired to moderately impaired. Also, she testified that the victim exhibited severe expressive language difficulties, severe difficulties in communication and articulation, difficulty understanding what was being asked of her, and she became fatigued easily. Vyas testified that the victim's processing speed, which relates to her ability to do things quickly in daily life, was "really deficient . . . ." Vyas stated that "she took in information at a much slower rate than I would expect [of] someone of her age." She testified that the victim's academic skills were at a second or third grade level, and that her executive functioning skills, which included her ability to assess, understand, and appreciate encounters of a sexual nature, were at an "elementary school" level.

[4] The instruction identified by the defendant states: "You as jurors are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are and to determine where the truth lies."

[5] The defendant does not raise a claim of instructional error in the present appeal.

[6] Although, as we have set forth previously in our discussion of this claim, the defendant stated in argument before the trial court that the evidence at issue was relevant to the issue of consent, this isolated statement was not the gravamen of the defendant's arguments concerning the admissibility of the evidence. The defendant's motion in limine and the arguments related thereto reflect that the defendant asserted primarily that the evidence was relevant because it was a prior false accusation by the victim concerning sexual abuse and, thus, it undermined her credibility in the present case.

[7] In his statement of issues, the defendant has framed the present claim as follows: "Whether [the] trial court abused its discretion in precluding questioning regarding (a) two prior instances when the complainant complained to her mother regarding having been touched; and (b) her mother's initial reaction to the events at issue here, which was influenced by these two prior instances." As part of his analysis of this evidentiary claim, however, the defendant sets forth boilerplate concerning his right to present a defense and then, in the context of analyzing the evidentiary claim he framed in his statement of the issues, merely asserts in summary fashion that, by precluding evidence concerning the prior allegations of touching, the court violated his "right of confrontation of witnesses . . . ." To the extent that the defendant has attempted to raise an unpreserved claim of constitutional magnitude, we deem that aspect of the claim to be inadequately briefed.

––––––––––––––––––––––––––