STATE OF CONNECTICUT *v.* STEVEN S.[1]
(AC 27185)

Bishop, Gruendel and Lavine, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued March 23—officially released June 19, 2007

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Steven S., appeals from the judgment of conviction rendered by the trial court following the denial of his motions to withdraw his guilty pleas. The defendant claims that the court (1) improperly denied his motions to withdraw his pleas

because they were not entered into knowingly, intelligently and voluntarily, and (2) violated his due process rights in not apprising him of certain special conditions of probation at the time of his pleas. We affirm the judgment of the trial court.

The following factual and procedural background is relevant to the resolution of the defendant's appeal. The defendant was charged in two informations with disorderly conduct and risk of injury to a child as a result of two incidents that occurred in April, 2004, namely, a domestic dispute with his wife and an incident in which he allegedly struck his son in the face. As a result, restraining orders and protective orders were imposed on the defendant forbidding physical or verbal contact with his wife or children. Within the next several months, the defendant was involved in several other cases relating to his wife and children. He was charged by way of twelve additional informations with, among other things, harassment, violation of a protective order and assault on public safety personnel.

The defendant, acting pro se and with standby counsel to assist him, negotiated a plea agreement that covered all fourteen informations. In sum, the agreement provided for the defendant to plead guilty to twelve charges in exchange for a term of eight years of incarceration, execution suspended after forty months, with four years of probation. Although there was no specific agreement as to any special conditions of probation concerning the defendant's contact with his wife and children because there were still matters pending in the family and juvenile courts, the defendant was made aware that there would be special conditions imposed at sentencing relating to access to his children. The defendant pleaded guilty to the charges,[2] and the court accepted the pleas.

[2] The defendant pleaded guilty under the *Alford* doctrine to some of the charges; see *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); and entered straight guilty pleas to the other charges.

On June 8, 2005, the defendant moved to withdraw his guilty pleas, claiming that they were not knowing, intelligent or voluntary. He claimed that the pleas were based on a belief that he would not be barred from contacting his children upon sentencing or expiration of the restraining order or during the period of his probation. The defendant also claimed that his pleas were based on a belief that the court-ordered evaluation to determine whether he would be serving his sentence at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting) in Middletown or in prison would be conducted within fifteen days of the evaluation order, as required by General Statutes § 17a-566.

On August 4, 2005, a hearing was held on the defendant's motion to withdraw his guilty pleas. At the hearing, the motion was orally modified to reference the docket numbers of all of the charges to which the defendant had pleaded guilty and to add the claim that he was under the influence of medication at the time the pleas were made and, therefore, that they were not knowing, voluntary or intelligent. On that same date, the motion was denied. The defendant then, on August 26, 2005, filed a written motion incorporating the previous oral modifications that were made during the August 4, 2005 hearing. That motion was also denied.

Following the court's denial of these motions, the defendant was sentenced to the agreed upon term. As part of the sentence, the court imposed special conditions of probation that, among other things, limited the defendant's contact with his children. The court stated that the defendant should not have "any contact with [his] children beyond the contact that would be allowed by [the department of children and families] and the Juvenile Court." This appeal ensued.

As a preliminary matter, we identify the legal principles and the standard of review germane to our discussion. "Practice Book § [39-27] specifies circumstances

under which a defendant may withdraw a guilty plea after it has been entered. [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Sutton*, 95 Conn. App. 139, 145, 895 A.2d 805, cert. denied, 278 Conn. 920, 901 A.2d 45 (2006).

"[I]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006).

"In order for a plea to be valid, the record must affirmatively disclose that the defendant understands the nature of the charge upon which the plea is entered . . . the mandatory minimum sentence, if any . . . the fact that a statute does not permit the sentence to be suspended . . . the maximum possible sentence . . . and that the defendant has the right to plead not guilty or to persist in that plea if already made, the right to a trial by a jury or judge, the right to assistance of counsel, the right to confront the defendant's accusers and the right against compelled self-incrimination. . . .

The record must further disclose that the plea is voluntary and not the result of threats or promises." (Internal quotation marks omitted.) *State* v. *Samuel*, 94 Conn. App. 715, 718–19, 894 A.2d 363, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006). With the foregoing in mind, we now turn to the defendant's specific claims.

I

The defendant first claims that the court abused its discretion in denying his motions to withdraw the guilty pleas because they were not knowing, intelligent and voluntary. Specifically, the defendant alleges that (1) he was impaired by medication at the time he entered the pleas, (2) the pleas were based on a belief that the court-ordered evaluation would be conducted within fifteen days of the evaluation order as required by § 17a-566, and (3) he was unfamiliar with the potential impact of pending civil and juvenile matters on his ability to have unrestricted contact with his children once he was released.

A

The defendant first claims that his pleas were not knowing, intelligent and voluntary because when he entered them, he was under the influence of Seroquel, a prescription medication that he alleges impaired his vision and decision-making ability and caused him to act impulsively.

During the plea canvass, the defendant indicated that he had taken the medication that day, that his head was clear and that he understood everything that was taking place. In moving to withdraw his pleas, the defendant claimed that the Seroquel made him drowsy and disoriented, that he was sound asleep during the plea canvass and that a physician had informed him that the medication would cause him to make irrational decisions. In support of his claim that the Seroquel affected

his pleas, the defendant offered the testimony of Eleanor Fritz, a nurse practitioner. Fritz explained that Seroquel is used to attempt to help people organize their thoughts to promote more efficient thinking, to slow the speed of their thought and to stop the pressure of speech "so that they can make more reasonable decisions . . . and be better able to problem solve and control their behaviors." Fritz testified that although she did not recall the defendant's specific dosage, she likely prescribed the lowest proven effective dosage of 100 milligrams. She further testified that she evaluates the drug's effect on patients, and, in the defendant's case, she did not change the dosage.

The court found that Fritz' testimony did not support the defendant's claim that the Seroquel rendered his pleas unknowing and involuntary. Rather, her testimony indicated that the Seroquel was prescribed to help organize thoughts and to slow the thought process to improve problem solving and to control behavior. Consistent with Fritz' testimony, the court found that the defendant was totally engaged during the one hour and forty minute plea canvass, that he answered all of the court's questions and that there was no evidence to support the assertion that the defendant was unable to control his impulses on the day that he entered his pleas. The court noted that it had had a long time to observe the defendant during the lengthy canvass, that he was clearheaded and did not appear to be acting impulsively, and that he corrected the state and the court more than once "when there were things incorrectly stated" and chose the counts to which he would enter straight guilty pleas and those to which he would enter *Alford* pleas. On the basis of the foregoing, the record supports the court's determination that the defendant failed to demonstrate that the medication rendered his pleas unknowing and involuntary.

B

The defendant next claims that his pleas were invalid because although he believed that he would be examined pursuant to § 17a-566[3] and a report would be completed within fifteen days, the report was not completed within that time period. We disagree.

On May 26, 2005, the defendant entered his guilty pleas, and the court ordered that he be evaluated under § 17a-566 to determine whether Whiting was an appropriate setting for him to serve his sentence. Although the plea agreement included a promise that the defendant would be evaluated under § 17a-566, the record does not disclose any other promises pertaining to the evaluation. On June 14, 2005, the cases were docketed at the court's request to address the time limitations to complete the report within the time period prescribed by § 17a-566. The court indicated that the examiners were seeking a fifteen day extension to complete the report and gave the defendant the option, if he wanted to pursue the evaluation, either to have the court reorder the examination or agree to waive the fifteen day

[3] General Statutes § 17a-566 (a) provides in relevant part: "Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers, or of a sex offense involving (1) physical force or violence, (2) disparity of age between an adult and a minor or (3) a sexual act of a compulsive or repetitive nature, may if it appears to the court that such person has psychiatric disabilities and is dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the division. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the division for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. . . ."

period imposed by § 17a-566.[4] In order to keep open the possibility of placement at Whiting, the defendant agreed to a fifteen day extension and waived the requirement that a report be filed within fifteen days of the order.

Prior to deciding to waive the time period, the defendant and the court had discussed his options, and the defendant articulated his concerns. The record shows that the defendant knew that he could refuse to agree to the extension but that he decided that waiving the time limit would benefit him. The defendant lost nothing by completing the evaluation because it would leave open the possibility that he would be sentenced to Whiting. If he did not agree to the extension, he would be foreclosed from that possibility unless it was reordered by the court. Additionally, the public defender's office had hired a private psychologist to examine the defendant, and the evaluation had not been completed at that time. The defendant himself sought an extension to finish that evaluation. On the basis of the foregoing waiver, this claim must fail.

C

The defendant next claims that his pleas were not knowing, intelligent and voluntary because he did not understand that he could be precluded from seeing his children on the basis of the pending civil and juvenile matters even though his access was not being restricted by his plea agreement. The record belies this claim.

In ruling on the motions to withdraw the guilty pleas, the court found that at the time of his pleas, the defendant was told that the protective orders would end at sentencing and that although the restraining orders expired six months after issuance by operation of law,

---

[4] Although the defendant was evaluated within the fifteen day period, on June 8, 2005, further evaluation was deemed necessary because he had a limited history of formal psychiatric treatment.

they could be extended by the family or civil court after the criminal case is finished. The court noted that in all of the conversations it had observed, including those on the record, the state had clearly indicated to the defendant that it could not guarantee that he would see his children because although the protective order would end at sentencing, the rest would be resolved in family court.

When the defendant pleaded guilty on May 26, 2005, the state summarized the special conditions of probation that were part of the plea agreement as follows: "[The defendant] is going through a custody hearing down in Waterford at Juvenile Court there. Presently, he is barred from having any contact with any of the children. We need language as a condition of his probation that's going to deal with whether he is going to be allowed to have contact with his children and that is similar to his wife. Presently, there are restraining orders that bar him from contact. Those restraining orders have a lifetime. The last one was renewed for a six month period. Whether that gets renewed or not is another story. So, we need some language dealing with that. And then, finally, we need some language dealing with the defendant's ability to be on school grounds where his children are going to be going to school, and I suppose some of that will have to do with whatever language we put in about his children."

Subsequently, the court thoroughly canvassed the defendant, and at no time during the canvass did he question the state's recitation of the anticipated special conditions of probation. Because the defendant was apprised of the possibility that his access to his children would be affected by the proceedings in the family courts, his claim that he was unaware of such a possibility lacks merit.

## II

The defendant next claims that the court imposed a special condition of probation that restricted his contact with his children, which was not part of the plea agreements, and that he therefore was denied due process of law. We disagree.

This is not a case in which the defendant was not informed of the possibility of the imposition of a condition of probation that might affect his access to his children. Indeed, at the plea hearing, as indicated previously, the state indicated that there would need to be a condition of the defendant's probation regarding contact with his wife and children but that that condition had not yet been worked out. The court thoroughly canvassed the defendant and confirmed that some of the conditions of probation were "to be worked out and others will be agreed upon." The defendant agreed to these terms and entered his guilty pleas, leaving the special conditions of probation open to be determined at a later date.

On appeal, the defendant relies on statements made by the court on a date subsequent to the plea hearing but before sentencing in claiming that he was told that his probation would not address his contact with his children. Although we acknowledge that the court did make such representations, because they were made subsequent to the pleas, it cannot be said that these representations induced the defendant to plead guilty. In fact, the conditions of probation imposed at sentencing flowed directly from the representations made at the plea hearing. Thus, the defendant was aware of the possibility that such conditions might be imposed at the time he entered the plea agreements. Accordingly, the defendant was not denied due process as a result of the imposition of the special conditions. On the basis of the foregoing, we conclude that the court did not

abuse its discretion by denying the defendant's motions to withdraw his pleas.

The judgment is affirmed.

In this opinion the other judges concurred.